**UNITED STATES of America**

v.

**Frank J. LEPERE.**

**Crim. No. 83–308–T.**

United States District Court, D. Massachusetts.

Dec. 19, 1984.

---

**19.** In this case NCNB did both of these activities thus greatly enhancing the property's value to an unpaid creditor. Plaintiff waited over two years from the date of Coley Burton's fraudulent conveyance to Janis Burton before bringing this action.

Janis M. Berry, Asst. U.S. Atty., Chief, Criminal Narcotics Unit and Narcotics Task Force, Boston, Mass., for United States.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, Mass., for defendant Frank J. Lepere.

## MEMORANDUM AND ORDER

TAURO, District Judge.

The defendant, Frank J. Lepere, was indicted on November 25, 1983 on charges that he engaged in a continuing criminal enterprise and conspired to import and possess large quantities of marijuana, in violation of 21 U.S.C. §§ 848, 963, and 846. He was arrested near Lake George, New York on November 2, 1984 and transferred to this district five days later. On November 14, 1984, following a hearing, the Magistrate ordered the defendant detained pending trial, pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*

The Magistrate found, by clear and convincing evidence, that the defendant would flee if released on any condition of bail. The Magistrate declared that, "Defendant's own unequivocal conduct during the course

of the past three years makes this conclusion inescapable." The Magistrate relied on the fact that defendant had been a fugitive since December 8, 1981 when he was indicted on drug importation charges in the District of South Carolina. Three days earlier, defendant had left his home in Marshfield, Massachusetts and remained unlocated until his arrest on November 2nd. The Magistrate found that, in light of the arrest of his confederates and the extensive publicity surrounding his case, the defendant was fully aware that law enforcement officers were looking for him.[1]

Defendant concedes that his absence for three years indicates some risk of flight, but he emphasizes that the absence was not itself a violation of the law. He maintains that certain stringent conditions of release plus the designation of several millions of dollars of property for forfeiture by his family, friends and business associates is sufficient to negate the possibility of flight.[2]

The court is impressed that defendant's family members have enough faith in him that they are willing to forfeit their homes and be left on the street in the event that he flees. The proffer of property by defendant's legitimate business associates and his friends is also impressive. Although the Magistrate discounted defendant's ties to his family and community on account of the fact that defendant had secluded himself in upstate New York for three years, the court is persuaded that the proffer of the property would significantly deter defendant from flight.

Our inquiry does not end here, however. We must consider the impact on our analysis of the statutory presumptions contained in the new Bail Reform Act. Under the Act:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.). . . .

18 U.S.C. § 3142(e).

The defendant is charged with, among other things, engaging in a continuing criminal enterprise under the provisions of 21 U.S.C. § 848. If convicted of this charge, defendant faces a maximum penalty of life imprisonment. Although this is a crime to which the statutory presumption may apply and although the Magistrate found that the government's evidence was strong,[3] the Magistrate chose not to invoke the statutory presumption.

■ After reviewing the record and the Magistrate's findings, the court finds that there is probable cause to believe that defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act. As such, the court is compelled to apply the statutory pre-

---

**1.** The Magistrate noted that defendant was arrested in a house on top of a secluded mountain area with limited access. Defendant apparently represented himself in the area as George Lepro. Documents were discovered that indicated that defendant also used the alias, Joseph Balboni.

**2.** Defendant's proposed conditions of release and properties designated for forfeiture are outlined in appendix A and appendix B attached to this memorandum and order.

**3.** The strength of the evidence is clouded somewhat by the question of whether the testimony of several of the co-defendants will be admissible in evidence against the defendant. This question is currently before the court of appeals in the related case of *United States v. Kevin R. Dailey,* No. 84–1578. The government intends to prosecute the defendant regardless of whether this testimony is admissible and hotly contests the Magistrate's suggestion that, without this evidence, there may be no admissible evidence against defendant.

sumption that no condition of release will assure defendant's appearance or the safety of the community. While the court believes that defendant's proposed conditions of release and the proffered property significantly negate the risk of flight evidenced by his absence from the jurisdiction for three years, the court is not persuaded that they adequately rebut the statutory presumption of risk of flight and danger.

■ The legislative history of the Bail Reform Act indicates that one of the major purposes of the Act was to prevent the pretrial recidivism of major drug traffickers. Congress sought to accomplish this by insisting that bail and pretrial release decisions be based on the danger of continued drug activities, as well as the traditional concerns of the likelihood of flight and danger of physical violence on release. Congress also inserted a provision that those charged with major drug offenses would be presumed too dangerous or risky to release.

The Senate Judiciary Report on the 1983 Senate bail reform bill, which was enacted with few modifications by Congress in 1984, stated that the Judiciary Committee,

for the most part, refrained from specifying what kinds of information are a sufficient basis for the denial of release, and has chosen to leave the resolution of this question to the sound judgment of the courts acting on a case-by-case basis. However, the bill does describe two sets of circumstances under which a *strong probability* arises that no form of conditional release will be adequate.

S.Rep. No. 225, 98th Cong., 1st Sess. 19 (1983) (emphasis added). These circumstances obtain when the defendant has a history of pretrial criminality, or when the defendant is charged with a drug offense punishable by a maximum term of ten years or more or with a felony committed with a firearm. *See* 18 U.S.C. § 3142(e). The Judiciary Committee noted

These [latter crimes] are serious and dangerous Federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with drug offenses....

S.Rep. No. 225 at 20.

■ The court is persuaded that Congress intended by its statutory presumption to raise the threshold that persons charged with major drug offenses must meet in order to establish that they do not pose a significant risk of flight or danger to the community. Thus, while the defendant's proposed conditions and proffered property might otherwise satisfy the court that he poses a reasonable risk of flight, the defendant's proposal does not satisfy the new statutory burden regarding flight. Nor does it rebut the presumption of dangerousness.[4]

For the reasons stated herein, defendant's motion to revoke the Magistrate's detention order is hereby DENIED.

### APPENDIX A

### ORDER AND ACKNOWLEDGMENT ON CONDITIONS OF BAIL

It is hereby ordered that the defendant FRANK J. LEPERE be released from the

---

**4.** The government argues that the two loaded handguns found in defendant's home at his arrest suggest that he would be dangerous to the community if released. The court finds that the discovery of the weapons, standing alone, does not establish a risk to the community. Nonetheless, the statute presumes that defendant poses a danger of continued drug trafficking.

custody of the United States Marshal subject to the following conditions, pursuant to 18 U.S.C. Section 3142(c), in addition to those conditions set forth in the Appearance Bond (CJA 17) and the Bail Reform Act Form to be executed by the defendant, to wit:

(1) That the defendant FRANK J. LEPERE not commit a federal, state or local crime during the period of release.

(2) That the defendant shall appear before the United States District Court at Boston, and such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above-entitled case, and shall abide by any judgment entered in the above-entitled case by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe.

(3) The defendant FRANK J. LEPERE shall, pending further order of this Court upon application and hearing, report telephonically to the law offices of Oteri, Weinberg & Lawson twice daily, once between the hours of 9:00 a.m. and 11:00 a.m. and again between the hours of 4:00 p.m. and 6:00 p.m. At the time of each call, defendant FRANK J. LEPERE shall inform said law offices of his whereabouts and supply a telephone number by means of which his whereabouts may be ascertained and verified. On any day on which said law office is not open foir business (i.e., Saturday, Sunday or legal holiday), defendant FRANK J. LEPERE shall provide such information to the law firm answering service. On such days, Martin G. Weinberg, or his designee shall undertake to verify such reporting by checking with his answering service at the expiration of each Saturday, Sunday or holiday call-in time.

(4) The law offices of Oteri, Weinberg & Lawson are hereby ordered to report to the judge's clerk the failure of defendant FRANK J. LEPERE to make any telephonic report required by paragraph (3) immediately upon the expiration of the time period provided for said report or, should such failure occur when court personnel are unavailable to receive such information, as soon as such personnel are available. In particular, it is ordered that the communication required by this paragraph be made by Martin G. Weinberg, Esquire. In the event of his absence from the said law firm, such communication shall be made either by Joseph S. Oteri, Esquire or James W. Lawson, Esquire in that order of precedence. Should no one of the three aforementioned persons be available, such communication shall be made by either of Lillian A. Wilmore, Esquire or Kimberly Homan, Esquire.

(5) In addition to the telephonic reporting required by paragraph (3), defendant FRANK J. LEPERE shall report once daily between the hours of 9:00 a.m. and 5:00 p.m. (including Saturday, Sunday and legal holidays) to the Marshfield police station.

(6) The travel of defendant FRANK J. LEPERE shall be restricted to that to and from his home in Marshfield to his place of business, Mid-Cape Fish Co., Plymouth, Massachusetts; to that to and from either his home or his aforesaid place of business to the law offices of Oteri, Weinberg & Lawson; to that to and from either his home or aforesaid place of business to the Marshfield police station to report as required by paragraph (5); it is expressly contemplated by this order that defendant FRANK J. LEPERE shall remain at his residence in Marshfield, Massachusetts, whenever he is not at his place of business, the aforesaid law offices or the Marshfield police station or in transit between such destinations.

(7) The defendant FRANK J. LEPERE shall surrender all valid passports.

(8) That, consistent with the provisions of Section 8 of the Victim and Witness Protection Act of 1982, P.L. 97–291 (Octo-

ber 12, 1982), 96 Stat. 1248, 1257, amending the provisions of 18 U.S.C. Section 3146(a), the defendant FRANK J. LEPERE shall not commit any offense involving the obstruction of justice by influencing or injuring or intimidating an officer, juror, or witness, before any court or grand jury of the United States in violation of the provisions of 18 U.S.C. Section 1503.

(9) That the defendant FRANK J. LEPERE shall not commit any offense involving the instruction of criminal investigations within the meaning of Title 18, United States Code, Section 1510.

(10) That, consistent with the provisions of Section 8 of the Victim and Witness Protection Act of 1982, P.L. 97–291 (October 12, 1982), 96 Stat. 1248, 1257, amending the provisions of 18 U.S.C. Section 3146(a), the defendant FRANK J. LEPERE shall not commit any offense involving the tampering with a witness, victim or an informant, within the meaning of Title 18, United States Code, Section 1512.

(11) That, consistent with the provisions of Section 8 of the Victim and Witness Protection Act of 1982, P.L. 97–291 (October 12, 1982) 96 Stat. 1248, 1257, amending the provisions of 18 U.S.C. Section 3146(a), the defendant FRANK J. LEPERE shall not commit any offense involving the retaliating against a witness, victim or an informant, within the meaning of Title 18, United States Code, Section 1513.

(12) That the defendant FRANK J. LEPERE shall indicate his awareness of the scope and extent of the conditions set forth herein by affixing his signature to the acknowledgement set forth below.

---

THE HONORABLE JOSEPH L. TAURO
UNITED STATES DISTRICT
COURT JUDGE
DATED: December 12, 1984

ACKNOWLEDGEMENT

I, FRANK J. LEPERE, have, with the assistance of my attorney, read and understand the conditions set forth in the Order immediately above. I further understand that if I violate any of those conditions set forth above, or any of those conditions set forth in the Appearance Bond (CJA 17) and the Bail Reform Act Form which I have executed simultaneously herewith, a warrant for my arrest shall issue, and, if I fail to appear before any court or judicial officer as required, an additional charge of bail jumping in violation of the provisions of 18 U.S.C. Section 3150 may be instituted against me. If convicted of bail jumping, I understand that I may be imprisoned for a period not to exceed ten years, and/or fined $25,000.00.

---

FRANK J. LEPERE
DATED: December 12, 1984
WITNESSED BY:

---

APPENDIX B

FRED G. PASTORE

CERTIFIED PUBLIC ACCOUNTANT

ONE COURT STREET, NINTH FLOOR

BOSTON, MASSACHUSETTS 02108

---

LIBERTY 2–1120

December 6, 1984

Mid Cape Fish Company, Inc.

Mid Cape Fillet Corporation

Building No. 36, Cordage Park

Plymouth MA 02360

We have prepared the accompanying combined balance sheet of Mid Cape Fish Company, Inc., and Mid Cape Fillet Corporation, as of November 30, 1984, from information furnished by the Treasurer of these corpo-

 /s/Fred G. Pastore

rations and appraisals obtained by him which are attached.

Fred G. Pastore

We have made no independent verifications.

Certified Public Accountant

Mid-Cape Fish Co., Inc. and Mid-Cape Fillet Corp.
Balance Sheet, Novermber 30, 1984, Unaudited
### Assets

| Current Assets | | | |
|---|---|---|---|
| Cash | | 10,876 | |
| Notes Receivable | | 394,500 | |
| Accounts Receivable | 147,409 | | |
| Less: Reserve for Uncollectible Accounts | 22,111 | 125,298 | |
| Refundable Deposits | | 7,400 | |
| Production Credit "B" Stock | | 21,390 | |
| Prepaid Interest | | 20,957 | 580,421 |
| Property, Plant, and Equipment | | | |
| Fishing Vessel-Western Ocean | | 355,000 | |
| Fishing Vessel-Crown Royal | | 475,000 | |
| Fishing Vessel-Howie | | 595,000 | |
| Miscellaneous Equipment | | 20,000 | 1,445,000 |
| Total Assets | | | 2,025,421 |

### Liabilities and Shareholders Equity

| Current Liabilities | | | |
|---|---|---|---|
| Accounts Payable | | 78,215 | |
| Payroll Taxes | | 568 | |
| Notes Payable-Current | | 189,800 | 268,583 |
| Notes Payable-Long Term | | | 397,738 |
| Shareholders Equity | | | 1,359,100 |
| Total Liabilities and Shareholders Equity | | | 2,025,421 |

| Schedule of Notes Payable | Current | Long Term |
|---|---|---|
| Production Credit | 90,000 | 123,880 |
| C J T | 68,800 | 74,584 |
| LePere Equipment Sales | — | 88,500 |
| Early Bird Realty Trust | — | 88,774 |
| Officers | — | 28,000 |
| Repurchase-Treasury Stock | 31,000 | — |
| | 189,800 | 397,738 |

FRED G. PASTORE *Certified Public Accountant* BOSTON, MASS.

BERNARD W. MACKENZIE
Marine Surveyor
15 Beaver Dam Road
Scituate, Massachusetts 02066

MID CAPE FISH COMPANY
CORDAGE PARK
N. PLYMOUTH, MA

CERTIFICATE OF APPRAISAL

F/V "WESTERN OCEAN"

OWNER: MID CAPE FISH

This will confirm that I have been appointed to appraise the value of the above named fishing vessel for the owners interest with said appraisal completed on November 23, 1984 while vessel was lying afloat at N. Plymouth, Massachusetts.

I, the appraiser having attended to the duties assigned to me, and after a strict examination and careful inquiry, do estimate and appraise the said F/V "WESTERN OCEAN", her hull, machinery, furnishings and equipment at THREE HUNDRED FIFTY–FIVE THOUSAND AND 00/100 DOLLARS ($355,000.)

In witness whereof I hereunto set my hand at Scituate, MA this 7th day of December, 1984.

/s/ Bernard W. MacKenzie
Bernard W. MacKenzie
Marine Appraiser

PLYMOUTH, SS

Then personally appeared Bernard W. MacKenzie, being duly sworn, deposes and says that the foregoing Appraisal and values contained therein are true and accurate to the best of his skill and judgement.

Sworn to before me this —— day of December, 1984.

_____
Notary Public

BERNARD W. MACKENZIE
Marine Surveyor
15 Beaver Dam Road
Scituate, Massachusetts 02066

MID CAPE FISH COMPANY
CORDAGE PARK
N. PLYMOUTH, MA

CERTIFICATE OF APPRAISAL

F/V "CROWN ROYAL"

OWNER: MID CAPE FISH

This will confirm that I have been appointed to appraise the value of the above named fishing vessel for the owners interest with said appraisal completed on November 23, 1984, while vessel was lying afloat at N. Plymouth, Massachusetts.

I, the appraiser having attended to the duties assigned to me, and after a strict examination and careful inquiry, do estimate and appraise the said F/V "CROWN ROYAL", her hull, machinery, furnishings and equipment at FOUR HUNDRED SEVENTY–FIVE THOUSAND AND 00/100 DOLLARS ($475,000.)

In witness whereof I hereunto set my hand at Scituate, MA this 7th day of December, 1984.

/s/ Bernard W. MacKenzie
Bernard W. MacKenzie
Marine Appraiser

PLYMOUTH, SS

Then personally appeared Bernard W. MacKenzie, being duly sworn, deposes and says that the foregoing Appraisal and values contained therein are true and accurate to the best of his skill and judgement.

Sworn to before me this 7th day of December, 1984.

_____
Notary Public

BERNARD W. MACKENZIE

Marine Surveyor

15 Beaver Dam Road

Scituate, Massachusetts 02066

MID CAPE FISH COMPANY

CORDAGE PARK

N. PLYMOUTH, MA.

## CERTIFICATE OF APPRAISAL

### F/V "HOWIE"

#### OWNER: MID CAPE FISH

This will confirm that I have been appointed to appraise the value of the above named fishing vessel for the owners interest with said appraisal being completed on November 23, 1984 while vessel was lying afloat at N. Plymouth, MA.

I, the appraiser having attended to the duties assigned to me, and after a strict examination and careful inquiry, do estimate and appraise the said F/V "HOWIE", her hull, machinery, furnishings and equipment at FIVE HUNDRED NINETY–FIVE THOUSAND AND 00/100 DOLLARS ($595,000.)

In witness whereof I hereunto set my hand at Scituate, MA this 7th day of December, 1984.

/s/ Bernard W. MacKenzie

Bernard W. MacKenzie

Marine Appraiser

PLYMOUTH, SS

Then personally appeared Bernard W. MacKenzie, being duly sworn, deposes and says that the foregoing Appraisal and values contained therein are true and accurate to the best of his skill and judgement.

Sworn to before me this 7th day of December, 1984

_____

Notary Public

## SCHEDULE A

### SCHEDULE OF REAL ESTATE STANDING IN THE NAME OF EARLY BIRD REALTY TRUST

| Property Description | Title Reference | Date of Purchase | Purchase Price | Present FMV |
|---|---|---|---|---|
| 1. 26 Hunt Way, Marshfield, Plymouth County Massachusetts. | Cert. No. 63765 | Regis. on 8/5/80 | $ 28,500.00 | $ 87,700.00 |
| 2. 9 Kent Avenue, Marshfield, Plymouth County, Massachusetts (family home) with five building lots. | Book 3679, Page 748 | 1971 | $ 90,000.00 | $390,000.00 |
| 3. Farm, off Woodvine Avenue, 61.6 acres. | Book 4004, Page 554 | 7/74 | $ 32,000.00 | $106,000.00 |
| 4. 835 Plain Street, Office and Garage and 6.6 acres. | Book 3493, Page 181 and Book 4016, Page 434 | 1967 1974 | $ 35,000.00 $ 20,000.00 | $615,000.00 |

TOTALS _____ $1,198,700.00

SCHEDULE A

## SCHEDULE OF REAL ESTATE STANDING IN THE
## NAME OF M.A.K. REALTY TRUST

| Title Reference | Property Description | Date of Purchase | Present FMV |
|---|---|---|---|
| Bk. 491, Pg. 87 | 1. Mountain House Property,* Washington County, New York | 9/2/82 | ) ) ) ) ) ) ) ) SEE COMPLAINT FOR FORFEITURE IN REM, No. 84–3775–K, paragraph 5: |
| Book 492, Pg. 62 | 2. Pilot Knob Road | 10/17/82 | ) "That the |
| Book 492, Pg. 66 | Property, | 10/12/82 | ) defendant real |
| Book 500, Pg. 73 | Washington County, | 11/14/83 | ) property with |
| Book 500, Pg. 738 | New York | 11/14/83 | ) buildings, ) appurtenances, ) and improvements |
| Book 497, Pg. 52 | 3. Woodlot Property, Washington County, New York | 9/20/83 | ) has a value of ) approximately ) one million two ) hundred fifty ) thousand dollars ) ($1,250,000.00). |
| Book 501, Pg. 224 | 4. Goodson Property, | 7/21/83 | ) There are no |
| Book 501, Pg. 230 | Washington County, New York | 1/18/84 | ) mortgages of ) record. ) ) ) |
| Book 653, Pg. 965 | 5. West Ridge Road, Land & Barn, Warren County, New York | 6/2/83 | ) ) ) ) |
| | | TOTALS ----------- | $ 1,250,000.00 |

* The descriptive names used here are taken from the government's Complaint For Forfeiture In Rem, No. 84–3775–K.

## SCHEDULE OF INDIVIDUAL PROPERTIES

| Owner | Property Address | Estimated Fair Market Value |
|---|---|---|
| 1. William D. & Jennie C. Lepere (father & mother of Frank Lepere) | 109 Theodore Park Road West Roxbury, MA | $185,000.00 |
| 2. Paul P. & Mary M. Miele | 78 Fiske Street Waltham, MA | |
| 3. Domenic J. & Margaret T. Albertazzi | 112 Brookline Street Watertown, MA | Approximately $200,000.00 to 250,000.00 |
| 4. Maurice O. & Catherine D. Quinn | 184 Fairway Drive Newton, MA | |
| | Totals | $385,000.00—$435,000.00 |