UNITED STATES of America

v.

**Vito AIELLO, Felippo Gambina, Giuseppe Giusto, Defendants.**

**No. S84 Cr. 881 (KTD).**

United States District Court, S.D. New York.

Nov. 30, 1984.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for United States; Edward J.M. Little, Asst. U.S. Atty., New York City, of counsel.

LaRossa, Cooper, Axenfeld, Mitchell & Bergman, New York City, for defendants Vito Aiello and Felippo Gambina; Michael Ross, New York City, of counsel.

OPINION

KEVIN THOMAS DUFFY, District Judge:

The passage of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, Title II, 98 Stat. 1837 (1984), containing the Bail Reform Act of 1984, has caused many

individuals some consternation as it has revamped certain procedures and ideas which have become accepted by our society. Some would reject the new ideas and procedures apparently solely because they are new. Others would have the courts construe the Act to maintain those procedures which Congress has sought to replace. Such efforts have been directed particularly to the pretrial detention provisions of the Bail Reform Act ("the Act") and the "presumptions" required by that statute. I have not been presented in this case with clear arguments challenging the constitutionality of the Act, nor do I rule on that question, but it should be clear that I would be loath to enforce a statute which is so repugnant as to be facially unconstitutional.[1] This case involves the procedures to be followed in those cases where the government insists that pretrial detention is necessary and the effect of the statutory presumptions in such cases.

The government seeks review pursuant to 18 U.S.C. § 3145(a) of an order by Magistrate Nina Gershon that defendants Vito Aiello and Felippo Gambina be released on bail of $1 million and $1.5 million respectively. Defendant Giuseppe Giusto does not appeal from Magistrate Gershon's order detaining him pending trial. For the reasons that follow, Magistrate Gershon's order is reversed and Aiello and Gambina are ordered detained pending trial pursuant to the newly-enacted detention provisions in the Act (codified at 18 U.S.C. § 3141 *et seq.*).

Magistrate Gershon held two hearings on November 19–20, 1984 on the question of bail in this case. The submissions by defendants consisted of proffers; no evidence was introduced nor witnesses examined. I note that the proceedings on the first day were not recorded by a court reporter but were instead tape-recorded. This is another example of the ineffectiveness of this manner of trying to record judicial proceedings because the tape that was supplied to me is apparently incomplete as the conversation stops mid-sentence at the point when Assistant United States Attorney Little begins to recount the items seized from the home of Vito Aiello at the time of his

---

1. The constitutionality of the Act, though not raised by defendants as a problem, was considered at length by the Senate Committee on the Judiciary. Senate Report at 7. The Act was patterned on the enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970. The discussion by the Senate Committee of the Act's constitutionality began with a review of the decisions upholding the District of Columbia statute. *See* Senate Report at 8 (citing *United States v. Edwards*, 430 A.2d 1321 (D.C.App.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982)).

The Senate Report made reference to the two most commonly raised constitutional objections to the District of Columbia Act; that the Eighth Amendment prohibits excessive bail and therefore impliedly guarantees an absolute right to release pending trial and that the Due Process Clause of the Fifth Amendment prohibits punishment of a defendant prior to an adjudication of guilt. Senate Report at 8. I will not repeat the reasoning of the *Edwards* court except to state that the court concluded that the purpose of the Eighth Amendment was to limit the discretion of the judiciary in setting money bail in individual cases and not to limit Congress' power to deny release for certain groups of individuals charged with certain crimes. Furthermore, in the past, courts have held that there is no absolute right to bail pending trial. *See, e.g., United States v. Beaman*, 631 F.2d 85, 86 (6th Cir.1980); *United States ex rel. England v. Anderson*, 347 F.Supp. 115, 118 (D.Del.1972) (bail may be denied before trial if there is reason to believe that defendant will not appear).

With respect to the Due Process Clause, the Committee found that although the pretrial detention provision is not *per se* unconstitutional, it might be constitutionally defective in the absence of certain procedural safeguards. Senate Report at 8. Such procedural safeguards have been incorporated into the Act. *See* 18 U.S.C. § 3142(f) (there must be a prompt detention hearing at which defendant has the right to be represented by counsel, to testify, present witnesses, cross-examine the government's witnesses, and to offer information not circumscribed by the formal rules of evidence). In addition the government must sustain its burden by clear and convincing evidence. *Id.; cf. Schall v. Martin*, —— U.S. ——, ——, 104 S.Ct. 2403, 2405, 81 L.Ed.2d 207 (1984) (New York Family Court Act § 320.5(3)(b) authorizing preventive detention of an accused juvenile delinquent upon a finding of a "serious risk" that the juvenile may "commit an act which if committed by an adult would constitute a crime" is not unconstitutional as it serves a legitimate state objective and contains adequate procedural safeguards).

arrest. The proceedings on the second day, however, were taken down by a court reporter and the transcript has been provided to me. In any case, there does not appear to be a dispute between the parties about what transpired on the first day. Furthermore, the transcript of the second day contains the positions of the parties. Finally, the government and the defendants summarized their positions at the hearing before me. Accordingly, I conclude that the record is not so deficient as to prevent a meaningful review.

In the complaint, the government alleges that Aiello and Gambina are part of the so-called "Pizza connection" in that they participated in a conspiracy to violate the federal narcotics laws and did in fact violate those laws by operating a narcotics business from a pizzeria located on West 125th Street, New York City. According to the government, the leader of the organization is Anthony Aiello who is a fugitive. Anthony's father, Vito Aiello, one of the respondents here, is alleged by the government to be the financier of and adviser to the organization. The government asserts that the other two defendants, Gambina and Giusto, are "active lieutenants" in the organization.

The government based its application for a pretrial detainer on the nature of the alleged criminal violations, the defendants' involvement in the drug operation, the nature of the items seized at the time of arrest, and the degree of defendants' ties in Sicily as compared with the United States. The defendants' proffers consisted of the fact that defendants have family ties in the United States and that neither defendant has a prior record. It should be noted that the defendants never actually called any witnesses nor submitted any evidence, by way of affidavit or otherwise, at the hearing. The Act specifically provides that the information presented at the hearing is not restricted to legally admissible evidence. 18 U.S.C. § 3142(f)(2) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at

the hearing."). For reasons stated later, however, it is my view that in cases involving the invocation of the presumption to detain a defendant, a mere "proffer" by defense counsel will generally be insufficient rebuttal.

After the parties summarized their positions at the second hearing, the Magistrate granted the government's application for a pretrial detention order for Giusto. Magistrate Gershon stated that her decision was predicated on the fact that Giusto has "very limited roots in this community. His wife is here but he has been married only a short time. All of his other family ties are in Italy. He's only 22 years old." Transcript of Hearing held November 20, 1984 ("Tr.") at 7. Furthermore, the Magistrate found that Giusto came to the United States in 1974 but spent three of the last ten years in Italy and has never made an effort to become a United States citizen. *Id.* Thus, the Magistrate held that the government had sustained its burden of proving by clear and convincing evidence that there are "no conditions of bail which could satisfy me that this defendant would return to court if he were released." *Id.* at 8.

Magistrate Gershon, however, distinguished Aiello and Gambina from Giusto. With respect to Aiello, she stated that the nature of the charges against him "reduces the risk that he will feel he has to flee in order to avoid facing these charges." *Id.* The Magistrate found that although a large sum of cash (in excess of $905,000) was found secreted in Aiello's ceiling along with a handgun and although the complaint sets forth facts sufficient to constitute probable cause, it nevertheless appeared that defenses might be available to Aiello which would encourage him to appear for his trial. Furthermore, the Magistrate noted that Aiello, who is 74 years old, had been in the United States for thirty years and his wife and children are here. Aiello, over the past years, has visited Sicily on at least six occasions, usually for periods of approxi-

mately a month or more. The Magistrate noted also that Aiello had no prior record. After reciting the above factors, Magistrate Gershon concluded that there exist conditions that would assure Aiello's reappearance.

Turning to Gambina who is 41 years old, the Magistrate noted that he has been in the United States for 17 years and has been a citizen for 10 years. Gambina has been married 17 years and has three children. Magistrate Gershon stated also that Gambina has no prior record and no substantial ties with Sicily. Thus, the bail set for Gambina was $1.5 million and the bail set for Aiello was $1 million. *See* Tr. 12.

## DISCUSSION

The Act provides that a judicial officer may issue an order pending trial to detain a defendant if, after a hearing, the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *see id.* § 3142(a).

The factors to be considered by the judicial officer in making a determination as to bail include (1) the "nature and circumstances of the offense charged, including whether the offense is a crime" involving a narcotic drug, (2) the "weight of the evidence against the person," (3) the "history and characteristics of the person," and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Furthermore, the Act provides that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a

maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) . . . .

18 U.S.C. § 3142(e).

■ Here, Aiello and Gambina are charged with violating the Controlled Substances Act, 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. Thus, the statutory presumption has been triggered. Defendants, relying on Magistrate Sharon Grubin's decision in *United States v. Chimurenga*, 84 Cr. 81 (RLC) (Memorandum and Order dated November 5, 1984), argue that "[w]here the ultimate result of the presumption is pretrial incarceration, the presumption must be viewed as one through which at most the burden of production and not the burden of persuasion shifts to the defendant." *Chimurenga* at 13. Magistrate Grubin held that because the defendants in *Chimurenga* had not been charged with violating the sections of Title 21 which trigger the statutory presumption (though the government offered to amend the complaint to include such charges), the government would not be accorded the benefit of the presumption. *Id.* at 13 & n. 17. The Magistrate focused on the likelihood of the defendants committing further crimes if released and indicated that, in her view, the government, even if it were aided by the presumption, had not shown a "strong probability" or clear and convincing evidence of danger to the community. *Id.* at 13. Thus, after five days of hearing evidence during which the defendants produced a number of witnesses, Magistrate Grubin found also that there were conditions that, once imposed, would assure the reappearance of the defendants. *Id.* at 14.

■ I cannot state that I agree with Magistrate Grubin's *dicta* in *Chimurenga*. According to the Senate Committee on the Judiciary, "it is appropriate in such circumstances [when the presumption is triggered] that the burden shift to the defendant to establish a basis for concluding that there are conditions of release sufficient to

assure that he will not again engage in dangerous criminal activity pending his trial." Senate Comm. on the Judiciary, S.Rep. No. 98–225, 98th Cong., 1st Sess. 19.[2] Clearly the legislative intent was that the burden would fall on the defendants to rebut the ultimate facts presumed under the Act. Once a charge is made that a defendant is guilty of a "grave"[3] narcotics violation, and in the absence of information supplied by the defendant tending to rebut the presumption, the government has sustained its burden of showing a "danger to society" or "risk of flight."

Congress has found that dealing in narcotic drugs is a danger to society; the detrimental impact on society is just as lethal as cancer is to an individual human being. Experience and observation in court has proved that to be true. Rarely does one see an addict over fifty. And the criminal activity that accompanies all levels of the drug trade is well known. Experience has taught that persons engaged in the trafficking of narcotics are generally involved on a continuous basis and that this nefarious trade is often the centerpoint of their daily activities. I do not believe it incumbent on the government to bring forth specific facts in court as to these matters.

It is also well known that neither opium poppies nor coca leaves are grown in the United States (except perhaps for strictly-controlled experimental purposes). The gathering of these plants is highly labor intensive and would not be done profitably in this country. The processing of both opiates and cocaine generally is done outside this country. It follows, therefore, that most illegal drugs come from abroad. In turn, this necessarily means that large scale narcotics dealers must have connections in foreign countries from which to make purchases and to whom they could flee. The amount of money involved in the sale of large amounts of narcotics means that such people would be in a position to pay for their flight to foreign countries or to secrete themselves in this country. Accordingly it would not seem appropriate to require the government to specifically prove these facts at a bail hearing.

The legislative history of the Act bears out that these considerations were exactly what Congress had in mind when it enacted the presumption at issue here. The Senate Committee stated:

> The drug offenses involve either trafficking in opiates or narcotic drugs, .... It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity .... Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

Senate Report at 20.

■ Thus, it seems clear to me that in a narcotics case where the presumption is triggered, a real burden to show specific facts rebutting the presumption falls to the

---

**2.** The Senate Committee's comment on the shifting to the defendant of the burden to show the existence of conditions of release that would assure that the defendant will not engage in dangerous criminal activity was made in the context of the first set of instances warranting the use of the presumption. The first set of instances involve prior convictions of the defendant. The second set of instances—applicable in the instant situation—involves the nature of the crimes with which the defendant is being charged. In its discussion of the second set of instances, however, the Senate Committee did not make any distinction with reference to the defendants' burden.

**3.** The legislative history indicates that the application of the rebuttable presumption should be limited to those cases "in which there is probable cause to believe that the person has committed a *grave* drug offense." Senate Report at 20 (emphasis supplied).

defendant. The amount of information that must be put forward by the defendant to rebut the presumption will vary from case to case. I suggest that it in great part depends on how much has been shown by the government in establishing that there is probable cause that a specified offense has been committed and that there is probable cause to believe that the particular defendant is guilty of that offense. It should be noted that probable cause must be proved by the government *before* any presumption can be called into play. As to the showing of probable cause, the burden is always on the government and the defendant need do nothing. No proof whatsoever need be shown by the defendant on this issue.

Depending on the strength of the government's showing on the question of probable cause, there is concomitant strength or weakness in the presumption called upon by the government. This, of course, means that the presumption can be very weak or very strong depending on where the case falls in the spectrum of matters brought to this court under the Narcotics Control Act.

For example, pursuant to the "Federal Day" sweep tactics of the government, this court has been processing cases which pale in significance to the matter at bar. In *United States v. Sanchez*, 84 Cr. 621, the defendant was charged under the Narcotics Control Act sections, 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1), which carry a potential punishment of 15 years, a $25,000 fine and life-time special parole. The charge in the *Sanchez* case would give rise to the presumption under a literal reading of the Act. The facts underlying the indictment are that the defendant, an addict, sold one dilaudid tablet for $20 to an undercover police officer. Sanchez had absolutely no money and was interested basically in supporting his own addiction.

In *Sanchez*, the government did not attempt to rely on any presumption to have the defendant detained—but if the government had sought to invoke the presumption, it would have been extraordinarily weak and could easily have been rebutted. Could anyone believe that Sanchez had connections outside of the country to which he would flee or that he had money to do so? While he might have been a danger to himself, I find it difficult to believe that Sanchez was a danger to the community such as envisioned by the Act. Perhaps a defendant in such a situation could merely point to the charges against himself and the government's proof as to probable cause to rebut the presumption.[4]

The instant case, however, is on the opposite end of the spectrum from *Sanchez*. Here, I am faced with a case involving high level trafficking in narcotics solely for profit. In such a context, the triggering of the presumption makes sense because unless rebutted, it is clear that no combination of bail conditions would assure the appearance of such an individual at trial and the safety of the community. The defendant's burden of rebutting the presumption is necessarily a heavy burden. Pointing to the charges against him would obviously be insufficient. In most instances, pointing to family obligations and ties in the United States would also be inadequate. A balancing of the factors set forth in section 3142(g) is necessary.

Applying these principles to the government's application for the pretrial detention of Aiello and Gambina, I find that the nature of the charges against them and the strength of the government's evidence indicate that pretrial detention is warranted. As I have noted, Aiello and Gambina are charged with engaging in, at a high level, the business of wholesaling narcotic drugs. The evidence accumulated against these defendants, as set forth in the sixty-page

---

**4.** As a matter of discretion, the prosecutor has yet to rely on the presumption in a case such as *Sanchez*.

supplemental affidavit which has been incorporated into the complaint, is substantial. Extensive surveillance has been conducted and a large amount of physical evidence, including recordings of telephone conversations, has been seized. According to the government, documents relating to defendants' narcotics' business have been seized from the Cafe Aiello which is assertedly the headquarters for the organization.

Furthermore, the third factor—the defendants' history—supports pretrial detention. Included among the person's "history and characteristics" are his family ties, financial resources, length of residence in the community, community ties and criminal history. *Id.* § 3142(g)(3)(A).

There is probable cause, as set forth in the complaint, to believe that Aiello and Gambina have committed a "grave drug offense." Senate Report at 20. In an attempt to rebut the presumption that was triggered by the nature of the charges against the defendants, defense counsel offered, by way of proffer, to show merely that both defendants had substantial family ties in the United States. The same proffer was made before me. I conclude that under the circumstances of this case, such a proffer is insufficient to rebut the presumption.

Both defendants have substantial ties in Sicily and have made or, in the case of Gambina, had planned to make trips to Sicily. Furthermore, both defendants have access to substantial sums of money as is evidenced by the approximately $905,000 found in Aiello's ceiling. Indeed, the Senate Committee noted that:

> "[t]he rationale for the use of financial conditions of release is that the prospect of forfeiture of the amount of a bond or of property used as collateral to secure release is sufficient to deter flight. However, when the proceeds of crime are used to post bond, this rationale no longer holds true. In recent years, there has been an increasing incidence of defendants, particularly those engaged in high-ly lucrative criminal activities such as drug trafficking, who are able to make extraordinarily high money bonds, posting bails and then fleeing the country. Among such defendants, forfeiture of bond is simply a cost of doing business, and it appears that there is a growing practice of reserving a portion of crime income to cover the cost of avoiding prosecution.

Senate Report at 24.

In addition, it appears that Magistrate Gershon did not consider squarely the issue of the danger posed to the community should Aiello and Gambina be released. In fact, the proffer by defense counsel as to the defendants' ties in the United States is wholly irrelevant to the issue of danger to the community and according to the Senate Committee does not even "necessarily reflect a likelihood of appearance." *Id.*

Thus, I find that under the circumstances in this case, pretrial detention of both defendants is warranted. The government has sustained its burden of establishing by clear and convincing evidence that there is "no condition or combination of conditions" that will "reasonably assure the appearance of the person as required and the safety of any other person and the community."

Accordingly, Magistrate Gershon's bail determination is reversed and both Vito Aiello and Felippo Gambina will be detained pending trial.

SO ORDERED.