**UNITED STATES of America, Plaintiff,**

v.

**Phillip B. MILLER, Defendant.**

**No. 85–10088–01.**

United States District Court,
D. Kansas.

Dec. 19, 1985.

514

Benjamin L. Burgess, Jr., U.S. Atty., Wichita, Kan., for plaintiff.

David W. Russell, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

On November 20, 1985, a grand jury indicted defendant Phillip B. Miller with one count of engaging in a continuing criminal enterprise, 21 U.S.C. § 848; nine counts of using a telephone to facilitate commission of a felony, 21 U.S.C. § 843(b); and one count of possessing 4.7 grams of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). (Rec. 1.) Miller was arrested, and appeared before Magistrate John Wooley for initial proceedings. On November 26, 1985, Magistrate Wooley held a deten-

tion hearing as provided in the Bail Reform Act of 1984, 18 U.S.C. § 3142. The prosecutor sought Miller's detention not on the ground defendant might flee before trial, but because he presented a danger to the community. Magistrate Wooley agreed and ordered Miller detained without bond pending trial. (Rec. 12.)

Defendant filed a motion for revocation or amendment of the detention order, contending Magistrate Wooley improperly interpreted and applied the provisions of the Bail Reform Act. (Rec. 8, 13.) Following a hearing on December 4, 1985, during which both parties reviewed the evidence and argued their positions, the Court agreed with defendant and concluded the government failed to establish by clear and convincing evidence no condition or combination of conditions will reasonably assure the safety of the community. The magistrate's detention order is revoked and Miller is released on bond, subject to the conditions set forth at the conclusion of this order.

### The Law

Under the Bail Reform Act of 1966, the dangerousness of a criminal defendant and corresponding risk to the safety of the community could not be considered in determining whether to release the defendant prior to trial. 18 U.S.C. § 3146(a) (1982) required pretrial release of every defendant other than those charged with an offense punishable by death, unless the judicial officer concluded "such a release will not reasonably assure the appearance of the person as required." The legislative history made clear the limited inquiry permissible under the statute:

This legislation does not deal with the problem of preventive detention of the accused because of the possibility that his liberty might endanger the public, either because of the possibility of the commission of further acts of violence by the accused during the pretrial period, or because of the fact that he is at large [sic] might result in the intimidation of witnesses or the destruction of evidence. It must be remembered that under Amer-

ican criminal jurisprudence pretrial bail may not be used as a device to protect society from the possible commission of additional crimes by the accused.

Report of the House Committee, H.R.Rep. No. 1541, 89th Cong., 2d Sess. 5–6 (1966), 1966 U.S.Code Cong. & Adm.News, 2293, 2296. Yet even in the face of the statutory prohibition against considering "dangerousness," it was doubted "a defendant's powerful disposition to incur further criminal liabilities could be ignored" at the pretrial release stage. *United States v. Melville,* 306 F.Supp. 124, 126–27 (S.D.N.Y.1969). Other courts were less circumspect, concluding notwithstanding the statute it was within their inherent powers to consider whether a defendant posed a danger to the public, and to deny or revoke bond on that basis. *See, e.g., U.S. v. Wind,* 527 F.2d 672, 674–75 (6th Cir.1975), and *U.S. v. Markowski,* 582 F.Supp. 1276, 1279 (N.D.Ind. 1984).

Reacting to the absence of any statutory authority permitting consideration of community safety, Congress enacted the Bail Reform Act of 1984. In light of the courts' willingness to entertain those considerations notwithstanding the statutory provisions, Congress perhaps overstated the problem when it said:

The constraints of the Bail Reform Act [of 1966] fail to grant the courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. If a court believes that a defendant poses such a danger, it faces a dilemma—either it can release the defendant prior to trial despite these fears, or it can find a reason, such as risk of flight, to detain the defendant (usually by imposing high money bond). In the Committee's view, *it is intolerable that the law denies judges the tools to make honest and appropriate decisions* regarding the release of such defendants.

S.Rep. No. 225, 98th Cong., 1st Sess. 5, *reprinted in* 1984 U.S.Code Cong. & Adm.

News, 3182, 3188 (emphasis added; hereafter S.Rep. at ——). Under the new act, judicial officers are required to consider both the risk of flight and the safety of any other person and the community before ordering a defendant's pretrial release. In certain cases a rebuttable presumption arises that "no condition or combination of conditions [of release] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

Rather than quote at length the legislative history of the new act, the Court finds much merit in the following analysis by Chief Judge Lay of the Eighth Circuit Court of Appeals:

The major differences between the superseded Bail Reform Act and the 1984 Act pretrial release provisions relevant to this case are the prohibition against using inordinately high financial conditions to detain defendants, and the authorization to consider in determining release conditions or detention the danger a defendant may pose to the community or certain individuals. The two changes eliminate the judicial practice of employing high bail to detain defendants considered dangerous and substitute a procedure allowing the judicial officer openly to consider the threat a defendant may pose. *The passage of the pretrial detention provision of the 1984 Act did not, however, signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial.* Rather, Congress was demonstrating its concern about "a *small but identifiable group of particularly dangerous defendants* as to whom neither the imposition [sic] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S.Rep. No. 225, 98th Cong., 1st Sess. 6–7, *reprinted in* 1984 Code Cong. & Ad.News at 3189. The legislative history stresses that "[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the defendant's interest in remaining at liberty prior to trial. * * *

*It is anticipated that [pretrial release] will continue to be appropriate for the majority of Federal defendants."* Id., at 7, 12 *reprinted in* 1984 U.S.Code Cong. & Ad.News at 3189 (emphasis added).

*Consistent with the intent expressed in the legislative history, the statutory scheme of 18 U.S.C. § 3142 continues to favor release over pretrial detention.* Section 3142 provides four alternatives from which the judicial officer must choose: (1) release on personal recognizance or unsecured appearance bond, or (2) release subject to certain conditions, or (3) temporary detention to permit, among other things, revocation of conditional release, or (4) pretrial detention. The judicial officer most often will be deciding between the first and the second alternatives. The statutorily mandated progression from one choice to the next is critical: a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not "reasonably assure" the defendant's appearance at trial or "will endanger" the community. The judicial officer must also consider whether one of the codified conditions or any combination of the conditions will "reasonably assure" the defendant's appearance and the safety of the community. *The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.*

\* \* \* \* \* \*

... Congress envisioned the pretrial detention of only a fraction of accused individuals awaiting trial.... The structure of the statute mandates every form of release be considered before detention may be imposed.

*U.S. v. Orta,* 760 F.2d 887, 890–92 (8th Cir.1985) (emphasis both added and in original).

18 U.S.C. § 3142(e) and (f) set forth the findings and procedures required for an order of detention. Subsection (e) provides that the judicial officer is to order the person detained if, after a hearing pursuant to subsection (f), he finds no conditions of release will reasonably assure the appearance of the person as required and the safety of any other person and the community. The facts underlying a finding of dangerousness must, under subsection (f), be supported by clear and convincing evidence.

■ The judicial officer must consider the factors specified in 18 U.S.C. § 3142(g) in determining whether any form of conditional release will reasonably assure the appearance of the defendant and the safety of the community. Those factors are: the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; the weight of the prosecution's evidence; defendant's history and personal characteristics, including the existence and nature of any prior criminal record; and the nature and seriousness of the danger to the community posed by defendant's release.

The offense and offender characteristics that will support the required finding for pretrial detention under subsection (e) will vary considerably in each case. Thus [Congress] has, for the most part, refrained from specifying what kinds of information are a sufficient basis for the denial of release, and has chosen to leave the resolution of this question to the sound judgment of the courts acting on a case-by-case basis. However, the [act] does describe two sets of circumstances under which a strong probability arises that no form of conditional release will be adequate.

The first of these arises when it is determined that a person charged with a seriously dangerous offense has in the past been convicted of committing another serious crime while on pretrial release....

\* \* \* \* \* \*

The second rebuttable presumption arises in cases in which the defendant is charged with felonies punishable by ten years or more of imprisonment described in 21 U.S.C. 841, 952(a), 953(a), 955 and 959 which cover opiate substances and offenses of the same gravity involving non-opiate controlled substances, or an offense under 18 U.S.C. 924(c) which covers use of a firearm to commit a felony. S.Rep. at 18–19, 1984 U.S.Code Cong. & Adm.News, 3201, 3202. Consideration of the subsection (g) factors is required whether or not the rebuttable presumption against release arises in a particular case. S.Rep. at 23.

■■■ The second rebuttable presumption against release arises whenever the judicial officer finds probable cause to believe defendant committed one of the specified offenses. 18 U.S.C. § 3142(e). The presence of an indictment charging such an offense, returned by a duly constituted grand jury, conclusively establishes the existence of probable cause for purposes of triggering the rebuttable presumption. *U.S. v. Contreras*, 776 F.2d 51, 55 (2d Cir.1985). A defendant's contention he "is not the sort of drug offender (i.e., one with important foreign connections) that Congress had in mind when it created the presumption" does not preclude its application where defendant fits within its terms, but that argument goes to the weight properly accorded the presumption. *U.S. v. Jessup*, 757 F.2d 378, 387 (1st Cir.1985).

There is slight disagreement among courts regarding the effect of the rebuttable presumption once it arises. In ordering defendant Miller's detention, Magistrate Wooley relied on *U.S. v. Aiello*, 598 F.Supp. 740 (S.D.N.Y.1984), holding that in a narcotics case where the presumption is triggered a heavy burden falls on defendant to show specific facts rebutting the presumption:

Clearly the legislative intent was that the burden would fall on the defendants to rebut the ultimate facts presumed under the Act. Once a charge is made that a defendant is guilty of a "grave" narcotics violation, and in the absence of information supplied by the defendant tending to rebut the presumption, the government has sustained its burden of showing a "danger to society" or "risk of flight."

*Aiello*, 598 F.Supp. at 744.

But that holding is a minority if not an isolated view. By requiring clear and convincing evidence supporting the finding no conditions of release will reasonably assure the safety of the community, the statute itself clearly implies the government retains the ultimate burden of persuasion. 18 U.S.C. § 3142(f). The overwhelming number of courts reaching the issue have so held, concluding the rebuttable presumption merely shifts to defendant a burden of production. Even the Second Circuit Court of Appeals rejected the analytical underpinnings of *Aiello*, holding the government labors under the burden of persuasion whether or not the rebuttable presumption applies, bearing the burden to prove by clear and convincing evidence defendant is dangerous. *U.S. v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985). The Court in *U.S. v. Moore*, 607 F.Supp. 489 (N.D.Cal.1985), explored the *Aiello* reasoning and found the legislative history relied on does not directly apply to situations where the government seeks to detain a defendant as a flight risk or danger to the community pursuant to a finding of probable cause defendant committed a serious narcotics offense. In addition, the Court noted, Congress affirmatively placed on a defendant the burden of persuasion in post-conviction release proceedings pending sentence or appeal, 18 U.S.C. § 3143(a); had Congress intended the pretrial detention provisions to operate similarly it would have so stated.

A further problem presented in *Aiello* is that the court reads the "clear and convincing" requirement out of the statute altogether, relying instead on the government's showing at the probable cause portion of the determination. This holding places too great a strain on the link set up by the rebuttable presumption. The probable cause determination

merely establishes the presumption. *The important consideration in determining whether a defendant should be detained without bail pending trial is not the strength of the evidence that defendant committed the narcotics offense but rather the strength of evidence regarding flight risk or danger to the community.*

*... [T]he government may not rest solely on the rebuttable presumption to support its motion to detain a defendant pending trial.* Evidence that defendant committed the narcotics offense with which he is charged, even if very compelling, cannot by itself satisfy the requirement of § 3142(f) that a determination "that no condition or combination of conditions will reasonably assure the safety of any other person and the community" be supported by clear and convincing evidence. Indeed, to find otherwise would also violate the directive of § 3142(g), which provides that certain factors—including the history and characteristics of the defendant—be considered by the court in determining whether a particular defendant be detained.

*Moore*, 607 F.Supp. at 498 (emphasis added). *Accord, U.S. v. Jessup*, 757 F.2d 378, 381 (1st Cir.1985); *U.S. v. Alatishe*, 768 F.2d 364, 371 (D.C.Cir.1985): and *U.S. v. Colombo*, 616 F.Supp. 780, 785 (E.D.N.Y. 1985), *rev'd on other grounds*, 777 F.2d 96 (2d Cir.1985).

 The criticism and overwhelming rejection of *Aiello* have stripped that case of any precedential value. The magistrate's reliance thereon, imposing on defendant Miller the burden of persuasion regarding the ultimate issue of danger to the community, was fundamental error. Consistent with the holdings of virtually every other court which has addressed the issue, this Court concludes that even where the rebuttable presumption of § 3142(e) is triggered by probable cause to believe defendant committed one of the specified offenses, the presumption imposes on defendant only a burden of producing evidence, while the government remains under the burden of persuading the court by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person and the community.

 The burden of production imposed on a defendant is "to offer some credible evidence contrary to the statutory presumption." *U.S. v. Alatishe*, 768 F.2d 364, 371 (D.C.Cir.1985). The rebuttable presumption contained in § 3142(e) is not a "bursting bubble" which disappears upon production of defendant's evidence:

In order to "rebut" the presumption, the defendant must produce some evidence; and the magistrate or judge should then still keep in mind the fact that Congress has found that offenders, as a general rule, pose *special* risks of flight. The magistrate or judge should incorporate that fact and finding among the other special factors that Congress has told him to weigh when making his bail decision. *See* § 3142(g)....

\* \* \* \* \* \*

Since the presumption is but one factor among many, its continued consideration does not impose a burden of persuasion upon the defendant. And, since Congress seeks only consideration of the general drug offender/flight problem, the magistrate or judge may still conclude that what is true in general is not true in the particular case before him. He is free to do so, and to release the defendant, as long as the defendant has presented some evidence and the magistrate or judge has evaluated all of the evidence with Congress's view of the general problem in mind.

*U.S. v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (emphasis in original). Where a defendant makes *no* attempt to offer any evidence contrary to the presumption, he may be detained upon the finding no conditions of release could reasonably assure the appearance of the defendant and the safety of the community. *Alatishe*, 768 F.2d at 371. But where a defendant does present evidence, even if it is insufficient to rebut the statutory presumption, "the clear

and convincing evidence requirement imposes a heavy burden of proof upon the Government which must be met before the defendant's liberty may be curtailed by pretrial detention." *U.S. v. Jones,* 614 F.Supp. 96, 98 (E.D.Pa.1985).

■ Before exploring the contours of the clear and convincing evidence requirement, the Court notes Congress' concept of "dangerousness" under the act:

The concept of defendant dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. . . . The Committee also emphasizes that the risk a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."

S.Rep. at 12–13, 1984 U.S.Code Cong. & Adm.News, 3195. Unquestionably, narcotics trading is recognized to be conduct of the most qualitatively harmful to society. *U.S. v. DiMauro,* 614 F.Supp. 461 (D.Me. 1985).

[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of "danger". . . . *Yet, the degree of that danger remains critical under § 3142(g).* To determine that degree and decide if a defendant should be detained, a judicial officer must weigh [the] factors [specified in subsection (g)].

*U.S. v. Leon,* 766 F.2d 77, 81 (2d Cir.1985) (emphasis added). Thus the fact a defendant is indicted for a serious narcotics violation, although important, is only one of numerous factors to be considered in the detention determination.

■ Turning to the clear and convincing standard of proof, Congress said:

Because of the importance of the interests of the defendant which are implicated in a pretrial detention hearing, the Committee has specifically provided that the facts on which the judicial officer bases a finding that no form of conditional release is adequate reasonably to assure the safety of any other person and the community, must be supported by clear and convincing evidence. This provision emphasizes the requirement that there be an evidentiary basis for the facts that lead the judicial officer to conclude that a pretrial detention is necessary. . . . [Thus], if the dangerous nature of the current offense is to be a basis of detention, then there should be evidence of the specific elements or circumstances of the offense, such as possession or use of a weapon or threats to a witness, that tend to indicate that the defendant will pose a danger to the safety of the community if released.

S.Rep. at 22, 1984 U.S.Code Cong. & Adm. News, 3205. The Second Circuit Court of Appeals has determined the clear and convincing evidence required means

something more than "preponderance of the evidence," and something less than "beyond a reasonable doubt." . . . *To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty.*

*U.S. v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985) (emphasis added). The factors detailed in § 3142(g) are to be considered in determining whether the government has proved by clear and convincing evidence defendant is one of the rare cases warranting detention. *U.S. v. Leon,* 766 F.2d 77, 81 (2d Cir.1985). Cases applying the clear and convincing standard of proof in the context of specific allegations of "dangerousness" will be analyzed after our review of the parties' evidence in this case.

The following observations concerning the Bail Reform Act of 1966 are even more compelling under the new act: "While the principles are quickly stated, their implementation calls for a compendious judgment upon an array of factors, none of which is neatly quantifiable, and all of which entail disconcerting elements of uncertainty, insufficient knowledge, and risk.... The complexities soon multiply in all but the simplest cases." *U.S. v. Melville,* 306 F.Supp. 124, 126 (S.D.N.Y.1969).

### *The Case*

 Before turning to the complexities of this case, we note the standards governing our review. A district court review of a magistrate's order is *de novo,* including the authority to conduct a detention hearing. *U.S. v. Maull,* 773 F.2d 1479, 1481 (8th Cir.1985) (en banc). When making the determinations required under the statute, the judicial officer can rely on matters presented at the detention hearing which would not be considered as competent, admissible evidence under traditional trial standards. *U.S. v. Fortna,* 769 F.2d 243 (5th Cir.1985). The district court should fully reconsider the magistrate's denial of bail and, in ruling on a motion for revocation or amendment, should not simply defer to the judgment of the magistrate but should reach its own independent conclusion on the merits. *U.S. v. Leon,* 766 F.2d 77, 80 (2d Cir.1985), and cases cited therein. The question whether this "independent determination" standard requires a second full evidentiary hearing is not decisive where, as in the present case, the parties stipulate the record before the magistrate is the evidence to be considered by the district court. *U.S. v. Colombo,* 616 F.Supp. 780, 783 (E.D.N.Y.1985), *rev'd on other grounds,* 777 F.2d 96 (2d Cir.1985).

Defendant Miller does not question the constitutionality of the rebuttable presumption against release, or of the legislation in general. *See U.S. v. Jessup,* 757 F.2d 378 (1st Cir.1985) (rebuttable presumption does not deprive a defendant of his liberty without due process in violation of the Fifth Amendment); and *U.S. v. Moore,* 607 F.Supp. 489 (N.D.Cal.1985) (Bail Reform Act of 1984 upheld against Fifth and Eighth Amendment challenges). For its part, the government does not contend Miller should be detained because of the risk of flight before trial. *See U.S. v. Medina,* 775 F.2d 1398 (11th Cir.1985). Nor does the government argue Miller presents a danger to the community by virtue of any tendencies toward physical violence. *See U.S. v. Leon,* 766 F.2d 77 (2d Cir.1985) (defendant made threats to prospective witnesses and had a propensity to carry firearm); *U.S. v. Delker,* 757 F.2d 1390 (3d Cir.1985) (defendant threatened and intimidated prospective witnesses and had prior convictions involving violent offenses); *U.S. v. Askari,* 608 F.Supp. 1045 (E.D.Pa. 1985) [defendant had lengthy criminal record including several convictions for violent crimes, and conduct charged (possession of firearm by convicted felon) occurred while defendant on probation]; and *U.S. v. Moore,* 607 F.Supp. 489 (N.D.Cal.1985) (informant testified he feared reprisal by defendant). Rather, the precise questions raised are, given probable cause to believe Miller committed the offenses charged, and the statutory rebuttable presumption that no conditions of release will reasonably assure the safety of the community, first, whether defendant has rebutted the presumption, and second, whether the government has shown by clear and convincing evidence Miller represents a danger to the community by virtue of the risk he will resume his criminal activities in narcotics trafficking.

At the detention hearing before the magistrate, the government called three witnesses, each of whom testified to having purchased cocaine from Miller at his home, in amounts ranging from one gram to one-half ounce, at various times over a period of years. Gerald Johnson, from 1980 through 1984, made increasingly frequent purchases from Miller. His visits to Miller's home were arranged over the telephone, and he paid Miller $300.00 for each one-eighth ounce purchase, for a total of approximately $2,500.00. Brian Schreck

purchased from one-quarter to one-half ounce of cocaine from Miller weekly, in the same manner, for redistribution to others. He paid Miller a total of $27,000.00 to $31,000.00, and testified Miller was not employed after 1980. Randy Chapman testified he purchased cocaine from Miller for resale to buyers from Kansas City. Purchases were made at Miller's home following arrangements over the telephone. He and Miller at one point discussed delivering one kilogram of cocaine to the Kansas City buyers, but decided against it because of logistical problems. The government also presented a transcript of the grand jury testimony of Richard Roberts, who testified Miller introduced he and his wife to cocaine use in 1983. Roberts' purchases, of one to two grams three or four times weekly, were made at defendant's home in the same manner as the others. Roberts estimated his cocaine expenses over time totaled approximately $10,000.00.

Defendant's rebuttal evidence consisted first of cross-examination of the government's witnesses. Gerald Johnson acknowledged he was testifying in exchange for immunity from prosecution. He also admitted purchasing cocaine from the other witnesses, Chapman and Schreck, during the time period in question. Johnson acknowledged having no "problems" with Miller, that Miller did not have an abusive nature or disposition, and that Johnson had no fear of defendant. On cross-examination, both Schreck and Chapman echoed the latter testimony. Chapman also admitted he was testifying in exchange for a reduced charge. Of course, Miller was denied any opportunity to cross-examine Richard Roberts, whose grand jury testimony must be considered in that light.

Miller also called as a defense witness Dr. Donald Lewellan, defendant's dentist and brother-in-law. They had been acquainted for 14 years, and Lewellan was of the opinion Miller would not flee, he was not violent, and he posed no danger to the community. He admitted on cross-examination by the government, however, that he was unaware of Miller's activities giving rise to the indictment. Defendant also

presented the affidavit of Charles T. Aikens, a prominent Wichita businessman with personal knowledge of Miller's substantial personal and financial ties to the community. Aikens was also of the opinion defendant would not flee, nor did he pose a danger to the safety of others.

Defendant Miller took the stand and testified he was a lifelong resident of Wichita, with no prior convictions and no tendency toward violence. He does not possess a passport and stands ready to abide by any and all conditions of release the Court deems appropriate. On cross-examination, Miller admitted he is not employed, and lives with his ex-wife, who is employed.

Magistrate Wooley found probable cause to believe defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. § 801 *et seq.* (Rec. 12.) He continued:

> I find that the credible testimony and information submitted at the hearing establishes by clear and convincing evidence that Defendant sold Cocaine on numerous occasions (at least 50 sales over a period of 2½ years) in 1983–84 and 85; Defendant was aware purchasers were selling and/or distributing to others; that Defendant offered no evidence contrary thereto; Defendant has not been gainfully employed since 1980; Many sales were made in Defendant's home in Eastborough; Defendant is a major drug dealer in this community; that Defendant's distribution of drugs constitutes a danger to society and Defendant has failed to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community (See *U.S.A. v. Aiello*, 598 F.Supp. 740, 744 (D.C., So.D. of N.Y.—1984)).

*Id.* The fundamental legal error of the magistrate's reliance on *Aiello*, shifting to defendant the burden of persuasion, has already been discussed.

Regarding the factual question of clear and convincing evidence, the Court finds

some guidance by reviewing cases which addressed the concept of danger to the community arising from the risk of recidivism. Under the 1966 Bail Reform Act a defendant's conduct in smuggling 864 kilograms of cocaine into the country while released on bond was found to pose a substantial danger to the community in *U.S. v. Markowski,* 582 F.Supp. 1276 (N.D.Ind. 1984). The court concluded detention without bail was warranted because it was "a rare case of extreme and unusual circumstances:" the criminal conduct occurred while defendant was released on initial bond; the $200,000.00 court deposit used to secure defendant's release came from criminal activity; defendant had access to, dealt with, and received extremely large sums of cash relating to a drug smuggling operation (the cocaine involved was valued at $27 million); and defendant had a Panamanian bank account into which funds derived from illegal activity were placed. *Markowski, id.* at 1277–78. Similarly, in *U.S. v. Stanley,* 449 F.Supp. 467 (N.D.Cal.1978), *aff'd* 601 F.2d 380 (9th Cir.1979), a substantial danger to the community was found in defendant's continued participation in a massive smuggling operation on both coasts while on release pending appeal of his conspiracy, importation, and possession of marijuana convictions.

Under the Bail Reform Act of 1984, the Second Circuit Court of Appeals has most recently ordered the pretrial detention of a defendant on grounds of dangerousness where he was charged with 16 crimes, including stealing controlled substances, possession with intent to distribute those controlled substances, engaging in a continuing criminal enterprise, transportation of stolen goods in interstate commerce, extortion, crimes of violence to further unlawful activity, and conspiring to obstruct, delay and affect commerce by robbery. *U.S. v. Colombo,* 616 F.Supp. 780 (E.D.N.Y.1985). Detention was warranted in *U.S. v. Volksen,* 766 F.2d 190 (5th Cir.1985), because the evidence established defendant's participation in numerous drug and unlawful firearms transactions, as well as her statements she would flee to Canada rather than go to prison. In *U.S. v. Fortna,* 769 F.2d 243 (5th Cir.1985), defendant was detained where unrebutted evidence showed massive amounts of cocaine and money were involved, defendant had substantial foreign contacts and the ability to clandestinely fly to South America, he was the head of a sophisticated criminal enterprise, and had been engaged in other significant drug trafficking and importation. Many detentions have been ordered on the basis of prior convictions and/or criminal activity occurring while the defendant is released on bail. *See U.S. v. Coleman,* 777 F.2d 888 (3d Cir.1985) (defendant had a substantial history of criminal conduct); *U.S. v. Rawls,* 620 F.Supp. 1358 (E.D.Pa.1985) (defendant previously pled guilty and no contest to charges of distribution and had received both parole terms and prison sentences); *U.S. v. DiMauro,* 614 F.Supp. 461 (D.Me. 1985) (defendant denied release pending appeal where evidence showed that notwithstanding prior convictions for possessing cocaine he had been involved at some level of significance in an ongoing course of narcotics trafficking); and *U.S. v. Payden,* 598 F.Supp. 1388 (S.D.N.Y.1984), *rev'd on other grounds* 759 F.2d 202 (2d Cir.1985) (district court initially detained defendant under Bail Reform Act of 1984 where defendant was charged with conspiracy to violate federal narcotics laws, distribution and possession with intent to distribute heroin, and engaging in continuing criminal enterprise, and conduct charged occurred during defendant's parole term for prior narcotics offense; Court of Appeals determined instead case governed by 1966 Act). Lastly, in the *Aiello* case relied on by both the government and Magistrate Wooley, defendant was detained where he had been engaged in wholesaling narcotic drugs at a high level, he had substantial foreign ties with current plans to take trips abroad, he had access to proceeds of criminal activity amounting to $905,000.00, and there was as well what the district court concluded to be a risk of danger to the community. 598 F.Supp. 740 (S.D.N.Y.1984). Of course, the conclusion in that case must be considered

in light of the erroneous burden of persuasion placed on defendant Aiello. *Cf. U.S. v. Chimurenga,* 760 F.2d 400 (2d Cir.1985) (no clear error in releasing defendant where he had no previous criminal record and his brothers posted $500,000 bond); and *U.S. v. Jones,* 614 F.Supp. 96 (E.D.Pa. 1985) (rejecting government's contention defendant, charged with three counts distributing heroin, three counts distributing cocaine, and one count use of telephone to facilitate distribution, was a "major narcotics trafficker;" held, government produced "no evidence" nor persuasively argued there were no conditions of release assuring the safety of the community).

This review of other cases is not to be understood as implying the question of release or detention of a particular defendant is to be resolved on any basis other than the evidence before the Court. It does serve, however, to emphasize the types of cases and specific factors courts have looked for in ordering detention.

In the present case the United States Attorney emphasizes, above all else, the evidence supporting the charge defendant engaged in a continuing criminal enterprise in violation of 21 U.S.C. § 848. He contends the series of transactions by defendant Miller poses a danger to the community, citing *Aiello, supra,* and *U.S. v. Hawkins,* 617 F.2d 59 (5th Cir.1980), a case not decided under the 1984 Bail Reform Act. Significantly, the *Hawkins* court noted:

> The government urges that the single fact that [defendant] has engaged in one conspiracy, by itself, is sufficient basis for a conclusion that the risk of repetition is a danger to the community that supports denial for bail, relying on *U.S. v. Miranda,* 442 F.Supp. 786 (S.D.Fla. 1977), *rev'd on other grounds* 593 F.2d 590 (5th Cir.1979). This argument misstates the holding in *Miranda,* and the district judge in the present case did not hold that one swallow makes a summer; rather, he concluded from the surrounding circumstances that the risk of continuing drug activity by [defendant] was so high that he is a danger to the community. The record before us does not convince us that we should reach a different conclusion.

617 F.2d at 61. The evidence in *Hawkins* included the fact defendant's minimal earnings from legitimate enterprises did not account for the substantial resources available and the lavish lifestyle he maintained; the cocaine in question cost $1.3 million; defendant claimed an interest in seized funds amounting to $132,000.00; there was testimony defendant had engaged in cocaine dealings before the conspiracy charged; and defendant made statements of owning 20,000 pounds of marijuana in Colombia.

■■■ To the extent the government argues, and the magistrate found, the single fact there is probable cause to believe defendant was engaged in a continuing criminal enterprise supports the inference he will return to his criminal activities and should therefore be detained, this Court emphatically rejects that notion. Nothing in the legislative history supports that idea, and to hold otherwise would flout the express legislative mandate of § 3142(g). Indeed, the *Hawkins* case on which the government relies stands for nothing if not the principle that the particular charges against a defendant are but one of numerous factors to be considered before ordering detention. *See also U.S. v. Moore, supra,* at 518–19.

Thus, the question is not simply whether Miller should be detained because the charges against him support the inference he will resume criminal activities if released. Rather, as previously stated, given probable cause to believe Miller committed those crimes triggering the rebuttable presumption against release, the questions are whether defendant has met his burden of production rebutting the presumption, and whether the government has produced clear and convincing evidence supporting a finding of danger to the community. The distinction is not without meaning under the Bail Reform Act of 1984.

■■■ The defendant produced evidence, and the government concedes, he is

not a risk of flight or danger to the community by virtue of physical violence. He has no prior criminal record, the crimes charged being his first offenses. He also produced evidence of good character, the belief of others he is not a danger to the community in any sense. Further, there was evidence of Miller's substantial personal and financial ties to the community. Certainly, Miller has not foregone the opportunity to present evidence. His burden of producing some credible evidence contrary to the presumption is not an onerous one, and the Court feels his evidence is adequate. At this point the rebutted presumption does not "disappear," but remains as a general factual consideration to be kept in mind as we review the prosecution's evidence regarding dangerousness. *See U.S. v. Jessup, supra* at 519.

██ Parenthetically, the Court notes that even were it to find defendant's evidence inadequate to rebut the statutory presumption, that would not relieve the government of its burden of persuading, by clear and convincing evidence, there is a risk of recidivism against which no conditions of release can reasonably assure the safety of others. § 3142(f); *U.S. v. Jones, supra* at 519–20.

██ There is convincing evidence to support the belief defendant was engaged in a continuing criminal enterprise and that he used the telephone to facilitate commission of a felony; there is also evidence he was in possession of cocaine with intent to distribute. While that evidence establishes probable cause to believe defendant committed the crimes charged, it does little to establish a risk of recidivism other than the degree to which that inference arises from the statutory presumption. In this case, as previously noted, defendant has rebutted that presumption, and it is therefore entitled to minimal weight. Beyond that, the evidence is less than clear and convincing there is, first, a significant risk of recidivism, and second, that no conditions of release can reasonably assure the safety of others against the degree of risk that might exist. The government argued, but presented only minimal evidence, defendant was at the top of a scheme of distribution in which he controlled the actions of others. The offenses charged are defendant's first. Conspicuous by its absence is any testimony the prosecution witnesses believed Miller would resume his criminal activities if released. Three of those four witnesses testified they were no longer using cocaine. The United States Attorney argues there is reason to believe defendant knew of the criminal investigation into his activities as early as August 1985, three months prior to the grand jury indictment. Defendant cogently responds the record is barren of any evidence showing criminal activity during that period.

Turning to consideration of the factors specified in § 3142(g), even assuming the first and second (nature of the offense charged and weight of the prosecution's evidence) are resolved in the government's favor, the third and fourth are not. Defendant's history and personal characteristics, and the nature and seriousness of the danger posed by his release, do not support the government's motion for detention. Under the totality of the circumstances, the Court cannot say this is one of the "rare and extreme" cases in which defendant poses "an especially grave risk" of danger to others because of the possibility he may resume his criminal activities. On this record that risk is not significant, and conditions of release can be imposed to reasonably assure the safety of the community.

IT IS ACCORDINGLY ORDERED this 4th day of December, 1985, the magistrate's detention order is revoked and defendant Miller is released subject to the following conditions:

1. He will comport himself in strict obedience to all federal, state and local laws, refraining from any pursuits constituting criminal activity thereunder. Defendant is also admonished not to commit any offense under 18 U.S.C. §§ 1503 (influencing or injuring an officer of the court or juror), 1512 (tampering with a witness, victim or informant),

and 1513 (retaliating against a witness, victim or informant).

2. Defendant will execute a bond in the amount of Fifty Thousand Dollars ($50,000.00), either secured by the undertakings of approved solvent sureties or by the deposit of an equal amount of cash.

3. Defendant will reside with his former wife, consistent with her agreement as expressed to the Court, at their Eastborough address, and will remain there as a resident throughout his release period unless he provides in writing a compelling reason for a change, the probation office approves such a change, and defendant notifies his attorney in writing of the change.

4. Defendant will report his whereabouts daily to the probation office at such intervals as that office shall desire, as often as it deems necessary.

5. Defendant is subject to an 8:00 P.M. curfew each evening, seven days a week, unless excused in advance by the probation office.

6. Defendant is permitted to operate a motor vehicle only as is necessary, and he is not to be at or near any of the airports or bus terminals of Sedgwick County.

7. He is not to leave Sedgwick County, Kansas, for any reason without securing prior permission from this Court, except for travel to Kansas City, Missouri, in order to meet with his attorney, which travel may be undertaken only after notifying the probation office.

8. Defendant is not to have any contact, by telephone, in person, or otherwise, with any of the persons identified as previously having dealt in controlled substances with him. These persons include both the government witnesses who appeared and testified, and others they may have named. The only contact or communication permitted is that undertaken through and in the presence of Miller's defense attorney in the course of normal trial preparation.

9. Defendant is to refrain from possessing a firearm, destructive device or other dangerous weapon, licensed or otherwise.

10. Defendant is to refrain from any and all use of alcohol and narcotic drugs or controlled substances as defined in § 102 of the Controlled Substances Act, 21 U.S.C. § 802, without a prescription by a licensed medical practitioner.

11. Defendant will report for, submit to, and complete any and all urinalysis tests which the probation office may require either on a scheduled or random basis.

12. Upon being released, defendant must make all appearances on time. He must keep in touch with his attorney at all times and give the attorney a telephone number where he can be reached, because notices of future proceedings may be given to the attorney and not directly to defendant.

Defendant must abide by all conditions of release unless he first obtains written permission from this Court. If defendant violates any condition of his release, or if he is late for a court appearance, a warrant for his arrest will issue immediately. Following arrest, the terms and conditions of any further release will be redetermined; bail may be revoked and defendant remanded to jail.

If defendant fails to appear before any court or judicial officer as required, his bond may be forfeited and an additional criminal charge, bail jumping, may be instituted against him. In the context of this case, the penalty for such an offense is a fine of not more than $25,000.00, or a consecutive 10-year prison term, or both. *See* 21 U.S.C. § 3146(b)(1)(A).