UNITED STATES, Appellant,

v.

Nathaniel COLEMAN, et al.

No. 85–1732.

United States Court of Appeals,
Third Circuit.

Submitted Nov. 25, 1985.

Decided Nov. 27, 1985.

---

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Jeanne K. Damirgian, Asst. U.S. Atty., Philadelphia, Pa., for appellant.

A. Richard Gerber, Norristown, Pa., for appellee.

Before SLOVITER, BECKER, and STAPLETON, Circuit Judges.

## OPINION SUR MOTION FOR REINSTATEMENT OF DETENTION

SLOVITER, Circuit Judge.

Once again we are faced with an issue arising under the provisions of the Bail Reform Act of 1984, which was enacted as part of the Comprehensive Crime Control Act of 1984. As we have recently had occasion to note, that Act sets forth different standards for release on bail for defendants who are pending trial, those who have been convicted and are awaiting sentencing, and those who have been sentenced and are pending appeal. In *United States v. Miller,* 753 F.2d 19 (3d Cir.1985), we considered the statutory section dealing with detention pending appeal. *See* 18 U.S.C. § 3143(b). In *United States v. Strong,* 775 F.2d 504 (3d Cir.1985), we considered the provision covering release or detention pending sentence. *See* 18 U.S.C. § 3143(a). In *United States v. Delker,* 757 F.2d 1390 (3d Cir.1985), we considered the provision of the statute authorizing detention without bail pending trial, 18 U.S.C. § 3142, the same issue before us today.

The applicable portions of that statutory section permit a judicial officer to "order the detention of the person prior to trial" if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute further provides:

In a case described in (f)(1), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the judge finds that—

(1) the person has been convicted of a Federal offense that is described in subsection (f)(1), or of a State or local offense that would have been an offense described in subsection (f)(1) if a circumstance giving rise to Federal jurisdiction had existed;

(2) the offense described in paragraph (1) was committed while the person was on release pending trial for a Federal, State, or local offense; and

(3) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in paragraph (1), whichever is later.

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably as-

sure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of title 18 of the United States Code.

(f) Detention hearing.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community in a case—

(1) upon motion of the attorney for the Government, that involves—

(A) a crime of violence;

(B) an offense for which the maximum sentence is life imprisonment or death;

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or section 1 of the Act of September 15, 1980 (21 U.S.C. 955a); or

(D) any felony committed after the person had been convicted of two or more prior offenses described in subparagraph (A) through (C), or two or more State or local offenses that would have been offenses described in subparagraph (A) through (C) if a circumstance giving rise to Federal jurisdiction had existed; or

(2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, that involves—

(A) a serious risk that the person will flee;

(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(e) and (f).

Defendant Nathaniel Coleman was indicted on May 29, 1985 on a two count indictment charging him with conspiracy to violate the civil rights of government witnesses, 18 U.S.C. § 241, and with obstruction of justice, 18 U.S.C. § 1503. The indictment charged that a government witness, Nigel Anderson, had died as a result of the conspiracy charged. On the government's motion for pretrial detention of Coleman, a hearing was held before a United States Magistrate, Edwin E. Naythons, who, at the conclusion of the hearing, entered an order denying Coleman bail. Coleman withdrew his appeal from that order and he remained in custody.

On September 6, 1985, the trial in this matter began before District Judge Charles R. Weiner and continued until September 24, 1985 when the district court declared a mistrial after the jury announced that they were deadlocked on both counts. According to the motion filed by Coleman's attorney in the district court, the jury divided equally with six jurors for conviction and six for acquittal. *See* Exhibit E to Government's Motion.

On October 2, 1985, Coleman filed a motion in the district court for release on bail. A hearing on the motion was not held until October 30, 1985, but because Coleman's witness did not appear, a second hearing was held on November 6, 1985. On November 20, 1985, the court entered an order granting Coleman's motion and ordering his release on November 25, 1985 or thereafter upon the posting of cash or good bail in the amount of $100,000. As authorized by statute, the government has appealed from the order granting Coleman's release. *See* 18 U.S.C. § 3731. *See also* 18 U.S.C. § 3145(c).

This matter comes before this panel of the court as an emergency motion, having been filed on November 25, 1985. The district court's memorandum states that the retrial of Coleman is scheduled to begin

Monday, December 2, 1985. The district court apparently declined to stay its order more than several hours. As a result of the court's failure to give us sufficient time to familiarize ourselves with the contentions of the parties and the portions of the record we needed, we entered a stay of the order releasing defendant until further order of this court. We find the district court's action in this connection particularly troubling because the matter was pending before it for more than seven weeks before it decided to release Coleman. In dealing with orders for detention or release under the Bail Reform Act, the district courts must keep in mind that the dispersal of the judges of this court among several states and various locations makes it imperative that a reasonable time be allotted for review of the appeal papers.

Turning now to the merits of the Government's motion, we note that our precedent is clear that in ruling on the motion for release or detention, the court of appeals has the obligation to make an independent determination of such application. *See United States v. Strong, supra,* at 505; *United States v. Delker,* 757 F.2d at 1399–1400. We should "give the reasons articulated by trial judges respectful consideration," although if "the trial judge's reasoning, together with the papers, affidavits, and portions of the record as the parties present" do not persuade us, we are free to reach a conclusion different from that of the trial judge. *Id.* at 1400.

We have before us the contrary conclusions reached by two judicial officers. The magistrate, after holding a hearing before trial, set forth his written findings of fact as well as a full statement of the reasons for the detention. *See* 18 U.S.C. § 3142(i)(1). He made a detailed review of the evidence upon which he relied to support his conclusions that "[t]here is a serious risk that the defendant will continue to obstruct or attempt to obstruct justice by threatening injury or intimidating or attempting to threaten, injure or intimidate prospective witnesses;" "that there is no condition or combination of conditions set forth in 18 U.S.C. § 3142(c) which will rea-

sonably assure the appearance of the defendant;" and "that there is no condition or combination of conditions set forth in 18 U.S.C. § 3142(c) which will reasonably assure the safety of the community and any other person."

The magistrate relied on the testimony of Agent Matthew L. Mullin, special agent for the Federal Bureau of Investigation, who testified that a confidential informant advised him that Coleman told the informant that Nigel Anderson, a government witness, "would have to be taken care of" and that later Anderson was indeed taken care of. He also referred to evidence that Coleman was charged in state court in Norristown, Pennsylvania in 1968 with blackmail, pointing a deadly weapon, carrying a deadly weapon, an unspecified offense with respect to obscene literature, robbery, and violation of the Drug Devices and Cosmetics Act, and that a directed verdict of not guilty was entered when the government's chief witness, Charles Romano, failed to appear, having departed for California and stated he was fearful of returning.

He also referred to testimony by the Chief of Appeals for the Montgomery County District Attorney that Coleman pleaded guilty to aggravated assault as a result of a plea bargain in a case in which he was charged with aggravated assault, simple assault, recklessly endangering another together with possessing an instrument of crime. In that incident the victim was stabbed by Coleman in the left flank area and in three places in and about the left arm. Another Montgomery County detective also testified that a cocaine dealer arrested on a drug charge was found carrying personal effects of Coleman in his car such as his traffic tickets and Social Security card, but the defendant refused to cooperate with respect to Coleman's involvement because of fear of reprisals. The magistrate also referred to statements which the government introduced from persons who are involved with Coleman in "loansharking activities" and to Coleman's conviction in a federal trial of distribution of heroin, as well as to Coleman's lengthy

criminal record of 13 other arrests and 7 convictions.

The magistrate noted that Coleman is 43 years of age, that he has been divorced for 3 years, that he has resided in Norristown with his mother and sister since release from prison on January 8, 1984, that he was previously incarcerated for 2½ years, and that he is unemployed and has no income. He is the father of a 20 year old daughter who lives in Norristown, and a 10 year old son who lives in South Carolina. These factors undoubtedly contributed to the magistrate's conclusion that no condition would reasonably assure the appearance of the defendant.

In the order which is the subject of this appeal, the district court reached a conclusion contrary to that of the magistrate about Coleman's likelihood of flight and danger to the community. We recognize that the district court heard the trial evidence and presided at the November bail hearing. However, in contrast to the details regarding the supporting evidence set forth in the magistrate's memorandum and conclusion, the district court's memorandum opinion and order, after setting forth briefly the procedural posture, stated only

We do not feel that Coleman, if released, will present a danger to the community, nor will he flee to avoid trial. Coleman has resided in Norristown for 24 years and has family ties. His mother has signed a statement that he will live with her if granted bail. The court has been advised that he has a job available to him. Mr. Coleman is to advise the court promptly the name and address of his employer. After he has posted his bail, he is to arrange to call Pretrial Services every day to advise them of his whereabouts and activities. By releasing Coleman on November 25, 1985, he shall have sufficient time to consult with his lawyer prior to the commencement of his new trial on December 2, 1985.

■ Assuming arguendo that the district court's memorandum adequately explains why Coleman is not likely to flee to avoid trial, it fails to set forth any reasons supporting its conclusion that Coleman will not present a danger to the community. Therefore, we cannot afford the district court's conclusion in that regard the "respectful consideration" referred to in *United States v. Delker*, 757 F.2d at 1400.

■ We are aware that the statute requires that a detention order include a written statement of the reasons for the detention but fails to make such a requirement for a release order. *Compare* 18 U.S.C. § 3142(i) *with* 18 U.S.C. § 3142(h). Nonetheless, when an order for release is contested, a statement of reasons is necessary so that we can intelligently perform our review function.

■ We turn next to our obligation to make an independent consideration of the several factors which must be taken into account in determining whether to detain or release defendant. As noted in *Delker*, these include: (1) the nature and seriousness of the offense charged; (2) the weight of evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct of history relating to drug, alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.* at 1398–99. *See* 18 U.S.C. § 3142(g).

*The nature and seriousness of the offense charged*

Coleman is charged with participating in a conspiracy resulting in the death of a government witness, an offense punishable by life in prison. *See* 18 U.S.C. § 241.

*The weight of the evidence against the defendant*

Because of the limited time available to us, we cannot evaluate the weight of the evidence against the defendant presented at the trial as we would under ordinary circumstances. We have reviewed the transcript of the original bail hearing, the portion of the trial transcript presented to us, and the transcript of the second bail hearing. At trial Haywood Logan, the

government informant, verified the prior hearsay testimony of agent Mullin and testified as follows:

Q. Do you recall specifically what Coleman had to say about Nigel Anderson?

A. Right. He said he was testifying in his case [the narcotics charge] and if he testified it would create a lot of problems for him and he had to have something done about him.

Trial Tr. of Sept. 17, 1985 at 6:34. Logan also testified:

Q. Did there come a time that you learned that this person named Nigel Anderson had been murdered?

A. Yes, I did.

Q. And how did you first learn of it?

A. I first heard about it, read about it in the paper. Then couple days later, Mr. Coleman came up to my establishment and we were celebrating.

Q. What was he celebrating?

A. Well, he told me that he had his business taken care of but only—one on one, him and I are talking, he told me, I guess you heard about old Nigel.

Q. Did he tell you who had taken care of business for him?

A. No, he didn't tell me who had taken care of business, but he said that he had it taken care of.

Trial Tr. of Sept. 17, 1985 at 4. It should be noted that Coleman testified and denied Logan's testimony. Accepting defendant's representation as to the jury vote, the evidence was sufficient to convince six jurors of Coleman's guilt beyond a reasonable doubt, but failed to convince the other six. However, the jury was required to find guilt beyond a reasonable doubt whereas under the Bail Reform Act it is sufficient to find that the defendant poses a danger to the community by clear and convincing evidence. *See* 18 U.S.C. § 3142(f). Furthermore, we note that the trial court made absolutely no finding with respect to the probability that Coleman committed the offense.

*Defendant's condition, past conduct or criminal history*

As noted above, Coleman has been charged with criminal conduct 13 other times. Even if our considerations were limited only to the seven criminal convictions, his history of criminal conduct is substantial. In 1958 Coleman was charged in state court with involuntary manslaughter and violation of the Uniform Firearms Act and, following a plea bargain, pled guilty to the firearms violation and was sentenced to one year probation and $100 fine. In 1960 Coleman was found guilty of two separate incidents of disorderly conduct. In 1961 he was found guilty of malicious mischief and was sentenced to 15 days to 1 year incarceration. In 1969 he was found guilty of drunk driving and was sentenced to one year probation and $200 fine.

In more recent years the offenses escalated. In 1978 he was charged with criminal attempt, aggravated assault, simple assault, recklessly endangering another, possessing an instrument of crime and a prohibited offensive weapon. As a result of a plea bargain, he pled guilty to aggravated assault and was sentenced to 2½ years probation and a $500 fine. In 1980 he was charged with the federal offense of distributing heroin and was found guilty by a jury. He was sentenced to 4 years incarceration, 5 years probation and 5 years special parole. He is presently on parole from the federal sentence. The present indictment charges that Nigel Anderson was a government witness who was killed before he could testify against Coleman while Coleman was on bond pending trial on the federal charge of distribution of heroin.

*Danger to any person or the community*

The drug offense for which Coleman was convicted, distribution of heroin, is a violation of the Controlled Substances Act and carries a maximum term of imprisonment of more than 10 years. *See* 21 U.S.C. § 841(b)(1)(A). He is currently on parole, and he is subject to revocation of parole should he be convicted of the pending charges. The seriousness with which Congress viewed drug offenses is evident throughout the Bail Reform Act, where

commission of a drug offense is frequently equated with danger to the community. *See, e.g.,* 18 U.S.C. § 3142(e). *See also United States v. Strong, supra,* at 507.

In *United States v. Delker,* 757 F.2d at 1400, we noted that the legislative history of the Bail Reform Act of 1984 repeatedly emphasizes that defendants who have threatened witnesses pose a significant danger and should be detained prior to trial. It follows that testimony that a defendant suggested or admitted complicity in action leading to the death of a witness against him is evidence that defendant poses a significant danger and should be detained before trial.

The district court's memorandum is devoid of any reference to defendant's criminal history, to the evidence presented at the original bail hearing, to the evidence presented at the trial, or to the evidence presented at the second bail hearing.

■ The district court appears to have concentrated on the previous criterion for bail, limited to the government's objective of assuring a defendant's presence at trial. That is no longer the law, The Bail Reform Act of 1984

> reflects "the deep public concern ... about the growing problem of crimes committed by persons on release" and the recognition that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community." S.Rep. No. 225, 98th Cong., 1st Sess. 6–7, *reprinted in* 1984 U.S.Code Cong. & Ad.News, P.L. 98–473, 3182 at 3188–3189. (Senate Report).

Our review of the evidence and our consideration of the factors enumerated in the statute lead us to conclude that the government has met its statutory burden to establish by clear and convincing evidence that Coleman poses a danger to persons in the community. Accordingly, we will grant the government's motion for reinstatement of detention.