**UNITED STATES of America, Plaintiff,**

**v.**

**Norma COX and Anthony Morris, Defendants.**

**No. 85–10093–01.**

United States District Court, D. Kansas.

March 31, 1986.

Charles O'Hara, Wichita, Kan., for Norma Cox.

Lyle Britt, Wichita, Kan., for Anthony Morris.

Jackie Williams, U.S. Atty., Wichita, Kan., for U.S.

## OPINION AND MEMORANDUM OF THE COURT

THEIS, District Judge.

On November 19, 1985, a Grand Jury for the United States District Court for the District of Kansas, handed down several indictments for controlled substance violations. Among those arrested on the Grand Jury's indictment was Norma Cox. A detention hearing was held before Magistrate John Wooley on November 22, 1985, in which the motion of the United States Attorney to detain Norma Cox pending trial was granted. Judge Wooley found that there was probable cause to believe that Cox had committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. § 841, *et seq.*, and that she had not rebutted the Government's evidence to that effect.

On December 3, 1985, Cox petitioned this Court for review of the Magistrate's detention order. A hearing was conducted the next day, at which the United States Attorney conceded that the defendant was not a flight risk, but argued that she should be detained because "no condition or combination of conditions will reasonably assure ... the safety of ... the community." 18 U.S.C. § 3142(e). Defendant called Dr. Howard Brodsky, a psychologist, who testified concerning her adverse reactions to incarceration, suggesting that her psychological state caused by detention could adversely affect her ability to assist counsel in preparation of her defense. Dr. Brodsky also testified that the potential of recidivism caused by her release posed no danger to the community because "whether 30 or 130 people were arrested I really don't think that will appreciably reduce the flow of cocaine in the community." Cox's family and friends also testified that she posed no threat of "dangerousness."

■ The Court was persuaded by defendant's testimony, and especially the testimony of Dr. Brodsky relating to defendant's psychological detriment by detention. The Court cannot accept Dr. Brodsky's opinion that enforcement will not deter the offense, but is in accord with most executive, legislative and judicial thinking which rejects the contention that the numerosity of offenses, offenders and public consumption is justification for abandoning enforce-

ment efforts or continuing judicial retribution on a deterence theory. In addition, cognizant of the pretrial release of all other defendants indicted by the same Grand Jury for similar offenses, this Court's abhorrence of disparity of treatment within a judicial district led it to examine closely the justification for pretrial detention of defendant Cox. That examination convinced this Court that Cox was not the type of defendant Congress had in mind in enacting this statute authorizing pretrial detention. The Court found that the defendant had overcome the presumption of 18 U.S.C. § 3142(e), and that the Government had thereafter failed to establish by clear and convincing evidence that the release of this particular defendant would pose a danger to the safety of the community. Therefore, defendant Cox was ordered released pursuant to certain conditions of 18 U.S.C. § 3142(c), which are noted in an earlier order of this Court. Because of this Court's opinion that some courts have misunderstood Congressional intent in authorizing pretrial detention of certain criminal suspects, because of this Court's conviction that the statute was not intended to be applied to defendants like Cox, and because the Court decries the disparate treatment of criminal defendants that can follow from misguided application of such a statute, the Court sets out below the reasons for Cox's release under the Bail Reform Act of 1984. The Court also examines how Congressional history and case law development have demonstrated the Act should be applied.

## I. THE BAIL REFORM ACT OF 1984

The Bail Reform Act of 1984, codified at 18 U.S.C. § 3142, effective October 12, 1984, sets forth relatively new standards for federal courts to apply in considering motions for pretrial detention. It can be expected that, like the pretrial detention provisions of the District of Columbia Code, on which it was modeled, greater experience with the Act will increase its effective and efficient use in accomplishing

the intent of Congress. H.R.Rep. No. 98–1030, 98th Cong., 2d Sess., 8–9, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3191 (hereinafter cited as H.R.Rep., U.S.Code Cong. & Admin.News). Although the Tenth Circuit has published cases dealing with the Act's provision for bail pending appeal, *United States v. Affleck,* 765 F.2d 944 (10th Cir.1985) (en banc), the Court is aware of no Tenth Circuit cases which deal with the more controversial aspects of the Act's pretrial detention provisions. At the time this matter arose no cases had been published from the United States District Court of Kansas which analyzed the matter, and the Court is still unaware of any unpublished district court cases on point. Judge Kelly, of this district, has since written on the matter in *United States v. Miller,* 625 F.Supp. 513 (D.Kan.1985), a case which arose out of the same set of indictments as the Cox case. It is this Court's intention, without duplicating the matters in Judge Kelly's admirable opinion, to set out considerations guiding the application of the Act in the hope of bringing its invocation more closely in line with the purpose for which it was enacted.

■ Congress adopted the Bail Reform Act of 1984 to address such problems as community safety and to give courts adequate authority to consider in release determinations the danger an accused might pose to others if released. H.R.Rep. at 3, U.S.Code Cong. & Admin.News at 3185. Prior to this Act, courts could not legitimately consider such factors as safety of the community in making release determinations.[1] Congress' concern was directed towards the "small but identifiable group of particularly dangerous defendants" who "pose an especially grave risk to the safety of the community." H.R.Rep. at 5–6, U.S. Code Cong. & Admin.News at 3188–89. It is a mistake to apply the detention provisions of this Act broadly; the legislative history clearly indicates Congress' understanding that it would be used against a

---

**1.** *United States v. Miller,* 625 F.Supp. at 515–16, contains a good discussion of prior bail standards and events leading to the enactment of

this Act. That discussion will not be repeated here.

"limited group of offenders." H.R.Rep. at 5, U.S.Code Cong. & Admin.News at 3188. The statutory language allows pretrial detention upon a finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Congressional concern regarding the safety of the community was directed to those cases "[w]here there is a strong probability that a person will commit additional crimes if released." H.R.Rep. at 7, U.S.Code Cong. & Admin.News at 3189.

■ Though allowing pretrial detention, the statute is structured so that every other form of release, including release on conditions and temporary detention, must be considered first. *United States v. Orta,* 760 F.2d 887, 892 (8th Cir.1985). Only as a last resort should pretrial detention be invoked. Although the statute can be applied to any offense, when the accused has been charged with certain offenses and the Court finds there is probable cause to believe he has committed those offenses, the statute creates a presumption that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). One such offense is a violation of controlled substances for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. § 801 *et seq.* or 21 U.S.C. § 951 *et seq.* Norma Cox was charged with an offense under 21 U.S.C. § 841(a)(1).

■ The rebuttable presumption of 18 U.S.C. § 3142(e) has been one of the most controversial aspects of the statute. Questions as to its constitutionality have been raised and settled. However, the effect

that the presumption plays continues to be discussed. One court has considered the presumption to shift the burden of persuasion to the defendant to show that he is not dangerous. *United States v. Aiello,* 598 F.Supp. 740 (S.D.N.Y.1984). But *Aiello* has been sharply criticized and overwhelmingly rejected. *United States v. Miller,* 625 F.Supp. at 519. Today, most if not all courts agree that the presumption shifts only a burden of production to the defendant, not the burden of persuasion.[2] A presumption not rebutted can be evidence going to detention.[3] Although as this opinion will discuss later, the Court is convinced that it should not be sufficient grounds for detention by itself. But even when the presumption is rebutted, it does not disappear. Courts have variously characterized it as: not being a "bursting bubble" but having "significant practical impact," *Jessup,* 757 F.2d at 383; remaining in the case as a factor to be considered by the judicial officer, *United States v. Fortna,* 769 F.2d 243, 251 (5th Cir.1985); and continuing to "weigh in the balance against bail," *United States v. Diaz,* 777 F.2d 1236, 1238 (7th Cir.1985).

■ The Court agrees that a Congressional determination that trafficking in drugs is to be equated with a danger to the community should remain a factor in the court's consideration. *United States v. Strong,* 775 F.2d 504, 506 (3rd Cir.1985). While the presumption is not a "bursting bubble," the emphasis should be on the Government's burden to establish a finding of dangerousness by clear and convincing evidence, as required by 18 U.S.C. § 3142(f). *United States v. Freitas,* 602 F.Supp. 1283, 1289 (N.D.Cal.1985).[1] As Judge Kelly, of this Court, said:

---

**2.** *United States v. Colombo,* 777 F.2d 96, 98 (2d Cir.1985); *United States v. Alatishe,* 768 F.2d 364, 371 (D.C.Cir.1985); *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985); *United States v. Jessup,* 757 F.2d 378, 381 (1st Cir.1985); *United States v. Ridinger,* 623 F.Supp. 1386, 1400 (W.D.Mo.1985); *United States v. Moore,* 607 F.Supp. 489, 497 (N.D.Cal.1985).

**3.** *Alatishe,* 768 F.2d at 371; *United States v. Volksen,* 766 F.2d 190, 192 (5th Cir.1985). Inso-

far that these decisions find that a presumption not rebutted is sufficient grounds for pretrial detention, this Court disagrees.

**4.** *Freitas* gives a good example of the presumption arising by the nature of the charge against the defendant, the defendant satisfying the burden of production by showing factors of reliability and stability, and the Government nonetheless meeting the clear and convincing standard by demonstrating defendant's lack of fami-

Thus, the question is not simply whether Miller should be detained because the charges against him support the inference he will resume criminal activity if released. Rather, ... given probable cause to believe Miller committed those crimes triggering the rebuttable presumption against release, the questions are whether defendant has met his burden of production rebutting the presumption, and whether the government has produced clear and convincing evidence supporting a finding of danger to the community.

*Miller*, 625 F.Supp. at 524. Courts should take this burden on the Government seriously in order to stay within the constitutionally permissible societal interests that Congress intended the Act to address. H.R.Rep. at 8, U.S.Code Cong. & Admin. News at 3191. One court has emphasized that "[w]e are dealing with the deprivation of the liberty of a citizen of the United States who is presumed to be innocent.... [T]he clear and convincing evidence requirement rightly places a heavy burden upon the government before this radical interference with freedom is imposed." *United States v. Fisher*, 618 F.Supp. 536, 537 (E.D.Pa.1985).

## II. APPLICATION OF THE BAIL RE- FORM ACT OF 1984 BY THE COURTS

### A. DISTRICT COURT'S STANDARD OF REVIEW

The statutory scheme is such that a pretrial detention hearing is to be held "immediately upon the person's first appearance before the judicial officer." 18 U.S.C. § 3142(f). The judicial officer will generally be a Magistrate. Appeals from a Magistrate's order to the district court are not

discussed by the statute. Because of the gravity of the matter, this Court held at the outset of the review hearing for Cox that its review would be conducted *de novo*.[5]

### B. PREDOMINANT CONCERNS IN APPLYING THE BAIL REFORM ACT

Before addressing the particulars of the Act, certain overriding principles need to be considered and superimposed on any application of the statute's authorization for pretrial detention. The Court's concern is the cornerstone of our system of criminal law: *the Constitutional presumption of innocence*. In some cases in which the Act creates a rebuttable presumption of dangerousness the presumption of innocence is forgotten or ignored. This is clearly contrary to Congressional intent. H.R.Rep. at 25, U.S.Code Cong. & Admin.News at 3208. The Act *could* be interpreted to say that an accused who is charged with one of the enumerated offenses giving rise to the rebuttable presumption, and for whom there is probable cause to believe that the offense was committed, is therefore *by virtue of the accusation alone* presumptively dangerous to the community and subject to detention. Such an interpretation is erroneous and contrary to the fundamental principles of criminal jurisprudence. While the Act's provisions allowing for pretrial detention are constitutional, that constitutionality is impinged when the government seeks to justify detention *solely* by virtue of the presumption. The government has a statutory burden to show by clear and convincing evidence that detention is warranted. The presumption can be a part of its arsenal in seeking to meet that standard,

ly or job ties, deep involvement in illegal drug activity and showing that this offense occurred while defendant was on probation for a rape charge. 602 F.Supp. at 1294.

**5.** The Court is aware that this is the majority opinion. *United States v. Maull*, 773 F.2d 1479, 1481–82 (8th Cir.1985); *Fortna*, 769 F.2d at 249; *Volksen*, 766 F.2d at 192; *United States v. Leon*, 766 F.2d 77, 80 (2d Cir.1985); *United States v. Delker*, 757 F.2d 1390, 1394 (3rd Cir.1985); *Mil-*

*ler*, 625 F.Supp. at 521; *United States v. Sierra*, 622 F.Supp. 1034, 1035 (S.D.Fla.1985); *Ridinger*, 623 F.Supp. at 1388; *United States v. Colombo*, 616 F.Supp. 780, 785 (E.D.N.Y.1985), *rev'd. on other grounds*, 777 F.2d 96 (2d Cir.1985); *United States v. Askari*, 608 F.Supp. 1045, 1046 (E.D.Pa. 1985); *Moore*, 607 F.Supp. at 500; *Freitas*, 602 F.Supp. at 1293; *United States v. Ramey*, 602 F.Supp. 821, 822 (E.D.N.C.1985).

but the presumption, *even unrebutted,* is insufficient standing alone to meet the burden of clear and convincing evidence.

■ The proper approach would be as follows. The accused should be allowed an opportunity to rebut the presumption. If he is successful, the government must then establish dangerousness by clear and convincing evidence, although the Court can consider that Congress intended this type of offense to merit special consideration. *Jessup,* 757 F.2d at 384. If the presumption is not rebutted adequately or at all, then the prosecutor may use it as a factor in establishing by some clear and convincing evidence that the accused is a threat to the safety of the community and should be detained. But the presumption by itself would be inadequate to prove dangerousness, so the prosecution must introduce other evidence in addition. Illustrative of the constitutionally-proper approach is *United States v. Jones,* 614 F.Supp. 96 (E.D.Pa.1985), in which the court found that while the defendant had not rebutted the presumption, the government had not met the clear and convincing evidence standard establishing dangerousness, and ordered that the defendant be released. *See also Fortna,* 769 F.2d at 253; *Moore,* 607 F.Supp. at 498. Such an approach is consistent with Congressional intent:

> Because the requirements of [18 U.S.C. § 3142(e)] must be met before a defendant may be detained, the fact that a defendant is charged with an offense described in subsection (f)(1)(A) through (C) *is not, in itself, sufficient to support a detention order.* However, the seriousness of the offenses described in subsection (f)(1)(A) through (C) coupled with the government motion is a sufficient basis for requiring an *inquiry* into whether detention may be necessary to protect the community from the danger that may be posed by a defendant charged with one of these crimes.

H.R.Rep. at 21, U.S.Code Cong. & Admin. News at 3204 (emphasis added).

■ Furthermore, the statute does not say that the rebuttable presumption itself arises merely by the fact of indictment. The statute requires the judicial officer to find that there is probable cause that the accused committed the presumption-triggering offense charged before the presumption may arise. Without in any way casting aspersions on grand jury proceedings, the Court does not find that a grand jury indictment alone can be sufficient to establish probable cause for the purpose of pretrial detention. Although the indictment may be considered, there must be an independent factual basis establishing probable cause that the offense charged was committed. *United States v. Allen,* 605 F.Supp. 864, 869 (W.D.Pa.1985). *See also United States v. Maktabi,* 601 F.Supp. 607, 611 (S.D.N.Y.1985). While recognizing that a grand jury indictment is normally sufficient to establish probable cause, the Court declines to hold that it is sufficient in an instance like this where probable cause is used to create a presumption in favor of detention. When dealing with as fundamental a right as personal liberty—the right to remain free from detention until a judicial determination of guilt arrived at with all of the traditional safeguards of a criminal trial—a heavier standard for establishing probable cause is required.

In summary, before pretrial detention may be determined under the Bail Reform Act of 1984's provisions, certain considerations regarding the preeminent presumption of innocence must be dealt with. First, given that the accused was indicted for one of the presumption-triggering offenses in the statute, was there an independent factual basis for determining that there was probable cause to believe the charged offenses were committed? If so, the statutory presumption of dangerousness to the community arises. The defendant is then given an opportunity to rebut that presumption. If he is unable to do so, the government may use the presumption as some evidence to satisfy its burden to establish by clear and convincing evidence that "no condition or combination of conditions will reasonably assure ... the safety

of any other person and the community." [6] If the presumption is rebutted, then the government may not use it to meet its burden, but the Court should remain aware that Congress has found offenses of this nature warrant special attention or "inquiry."

## C. THE BAIL REFORM ACT OF 1984'S STANDARDS FOR DETENTION

The Bail Reform Act of 1984 authorizes pretrial detention only upon a finding that "no condition or combination of conditions will reasonably assure the *appearance* of the person as required and the *safety* of any other person and the community." 18 U.S.C. § 3142(e) (emphasis added). In other words, the judicial officer may detain the accused pending trial only upon a finding that the risk of the accused fleeing before trial or injuring the community in some way is so great that there is no bail or release condition which could overcome that risk.[7] Either finding will support an order for pretrial detention.

Risk of flight has traditionally been grounds for detention in lieu of bail. In this case the government relied on the dangerousness factor, not the flight factor, to justify detention. Because of that, and because of the long history of considering flight risks in making bail or detention determinations, the Court will not here develop an extensive analysis of risk of flight considerations. Instead, it will only discuss the flight factor as it impacts upon the statutory purpose as a whole.

Historically, release on bond was developed to insure a defendant's appearance at trial. The theory was that for each particular defendant an amount of money existed which, when put at risk, was sufficient to assure that the defendant would appear rather than cause himself or his family to forfeit that sum. In adopting the Bail Reform Act of 1984, Congress recognized that this rationale no longer holds true when the bond is posted from proceeds of criminal activity, particularly highly lucrative criminal activity such as drug trafficking where extraordinarily high money bonds can be routinely forfeited as merely a "cost of doing business." H.R.Rep. at 23–24, U.S.Code Cong. & Admin.News, at 3206–07. In fact, a study of ten select districts cited by the *Jessup* court, 757 F.2d at 385, showed that while drug offenders accounted for one-sixth of all offenses charged, they accounted for one-half of all bail jumpers. It was for this reason that Congress authorized special considerations of defendants charged with such crimes.

Of course, traditional reasons for flight such as fear of incarceration continue to be valid reasons justifying pretrial detention. *See, e.g., Diaz,* 777 F.2d at 1237–39 (charge against defendant is so serious, threatened punishment of life imprisonment without possibility of parole is so heavy, and evidence of guilt is so strong that temptation to flee would be overwhelming, especially for a defendant such as this one who has access to large sums of money and is fluent in Spanish); *Volksen,* 766 F.2d at 193 (evidence was presented that defendant

**6.** The Court notes that the statutory language only requires that detention due to the "safety" factor be established by clear and convincing evidence. As a result, some disagreement among the courts has arisen as to the standard to be used in justifying detention due to the "appearance" factor. Some courts have held that the appropriate standard to be used in that instance is preponderance of the evidence. *United States v. Medina,* 775 F.2d 1398, 1402 (11th Cir.1985); *United States v. Motamedi,* 767 F.2d 1403, 1406 (9th Cir.1985); *United States v. Logan,* 613 F.Supp. 1227, 1228 (D.C.Mont.1985). At least one court has held that both the "safety" and the "appearance" factors should be established by clear and convincing evidence.

*Moore,* 607 F.Supp. at 497. The government has moved for Cox's detention solely on grounds of safety to the community. Accordingly, this Court need not now decide which standard of evidence should be applied in establishing risk of flight.

**7.** In this case testimony was received that the accused, a woman of upper class resources, was reacting so adversely to the conditions of her incarceration in the county jail as to potentially impact her right to effective assistance of counsel. The statute does not allow for consideration of such mitigating factors, though perhaps it should.

had said she would flee to Canada rather than go to jail); *Sierra,* 622 F.Supp. at 1037 (defendant was an illegal alien from Columbia with no ties to the United States).

The newer and more controversial statutory justification for pretrial detention is the dangerousness factor: the risk that a defendant would pose to the safety of the community if released. It was this factor that the government relied on for Cox's detention. The Court determined that such reliance was misplaced and that Cox was not the dangerous type of defendant Congress had in mind. In support of that finding, the Court sets out the following development of the concept of dangerousness. Ultimately, dangerousness must be determined on a case by case basis, with all relevant factors being considered. Congress wisely did not fetter the courts' discretion in this matter. Unfettered discretion, however, is not a license for arbitrariness, and certain factors can be identified in aid of the exercise of such discretion.

Congressional history demonstrates that the purpose of the expanded detention provisions is to authorize detention "where there is a strong possibility that a person will commit additional crimes if released." H.R.Rep. at 7, U.S.Code Cong. & Admin. News at 3189. The statutory "safety of the community" language "refers to the danger that the defendant might engage in criminal activity to the detriment of the community" in which continued drug trafficking is of particular concern. H.R.Rep. 12–13, U.S.Code Cong. & Admin.News at 3195–96. "Community" may be used generically or specifically as to site or area, i.e., nationwide or less. The House report took pains to point out that continued drug activity, while not the sole reason for establishing a "safety of the community" factor, was certainly a major one:

> It is well known that drug trafficking is carried on to an unusual degree by persons engaged in *continuing patterns of criminal activity.* Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of

the nature of the criminal activity with which they are charged, they *pose a significant risk of pretrial recidivism.*

H.R.Rep. at 20, U.S.Code Cong. & Admin. News at 3203 (emphasis added).

These insights into Congressional intent, coupled with the excerpts cited above, show that Congress intended pretrial detention to be limited to the small, identifiable group of particularly dangerous defendants whose continued pattern of criminal activity shows that they pose a significant risk of recidivism or violent behavior. Congress did not paint with a broad brush, but with a narrow one. *See United States v. Williams,* 753 F.2d 329, 333 (4th Cir.1985).

The House report stated that "certain combinations of offense and offender characteristics ... have been shown in studies to have a strong positive relationship to predicting the probability that a defendant will commit a new offense while on release." H.R.Rep. at 9, U.S.Code Cong. & Admin.News at 3192. Therefore, Congress set out some general factors to consider in determining dangerousness, including the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the one charged, and the nature and seriousness of any danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also* H.R.Rep. at 22–24, U.S.Code Cong. & Admin.News at 3205–07.

In sum, these provisions were not enacted as a form of pretrial punishment, but rather were designed "to curtail reasonably predictable conduct." H.R.Rep. at 8, U.S. Code Cong. & Admin.News at 3191, (quoting *United States v. Edwards,* 430 A.2d 1321 (D.C.App.1981) (en banc)). It is with this end in view, the end of preventing future criminality, that detention motions must be considered.

Because of the relative newness of this statute, case law has only begun to develop. This Court's research uncovered 88 published district and appellate court cases on the Bail Reform Act for the fifteen months from the date of its enactment

through the end of 1985. The Supreme Court has not yet had an occasion to address it. The Court has examined these cases to discover how other courts have applied the Act, and particularly to see what factors other courts have considered in determining whether a particular defendant was dangerous and should therefore be detained.

The statutory concern with community safety (or defendant dangerousness, terms the Court uses interchangeably) is not limited to acts of violence, as popular perception of that term might conclude. As earlier cited portions of the Congressional history clearly shows, Congress intended that continued drug trafficking constitute a danger to the community. The distribution of illegal narcotics constitute a serious and pervasive danger to the community. A single drug dealer with a well connected system of distribution can wreak more havoc on a community than an armed band of thieves or gangsters. Again, evidentiary experience in many "hard drug" cases, principally cocaine and heroin, have shown conclusively the proliferating effect of drug distribution. The user or addict is compelled by the compulsion of addiction to commit all kinds of immoral or illegal acts to finance his habit, i.e., armed robbery, burglary, drug selling, shoplifting, bogus check passing, counterfeiting, prostitution, etc. Merely because the danger posed by the drug dealer is less visual or physical than a shooting, knifing, abduction or otherwise, as just noted, does not make it less dangerous. The Court notes that other courts have shared this opinion. *See, e.g., Fortna,* 769 F.2d at 246.

But it does not logically follow from this that all persons charged with a drug offense are therefore dangerous. While axiomatic that a drug kingpin is a danger to the community, it is not necessarily the case that his couriers or first time dealers are. However, a drug-distributing kingpin or leader is often difficult to ascertain either from an investigatory or judicial viewpoint for the reason that the offense itself always has within it elements of conspiracy and/or aiding and abetting with hierarchial or layered levels and methods of distribution from inception to the street. In examining the other court cases dealing with detention due to dangerousness under 18 U.S.C. § 3142 (most, though not all, of which dealt with drug offenses), the Court is struck by how often dangerousness was decided on the basis of violence. A history or a very real threat of murder,[8] a record of crimes of violence[9] and/or other crimes,[10] the presence of weapons,[11] or

**8.** *United States v. Coleman,* 777 F.2d 888, 892 (3rd Cir.1985) (defendant assured an informer that a government witness "would be taken care of" and the witness was later killed); *Colombo,* 777 F.2d at 97 (defendant operated a criminal enterprise involved in murder); *United States v. Daniels,* 772 F.2d 382, 383 (7th Cir.1985) (defendant had previously been convicted of bludgeoning someone to death in a $60 dispute); *United States v. Acevedo-Ramas,* 755 F.2d 203, 205 (1st Cir.1985) (defendant had been involved in three prior murder-robberies of jewelers); *United States v. Fonfrias,* 612 F.Supp. 999, 1001–02 (D.Puerto Rico 1985) (defendant had arranged to have sole witness to a murder killed); *United States v. Payden,* 609 F.Supp. 1273, 1277 (S.D.N.Y.1985) (defendant attempted to have government witness killed, had history of serious offenses including murder); *United States v. Buck,* 609 F.Supp. 713, 714 (S.D.N.Y.1985) (defendant had been charged in three bankrobbery killings).

**9.** *Coleman,* 777 F.2d at 891–93 (blackmail, pointing a deadly weapon, robbery, aggravated assault); *Colombo,* 777 F.2d at 97 (robbery, arson, extortion, threats, assaults); *Daniels,* 772 F.2d at 383 (battery, unlawful use of a weapon, armed robbery, aggravated kidnapping); *Leon,* 766 F.2d at 79 (alleged to have been assailant in recent shooting); *Delker,* 757 F.2d at 1400 (robbery, assault, criminal mischief); *Acevedo-Ramas,* 755 F.2d at 205 (armed robbery, burglary, kidnapping); *Payden,* 609 F.Supp. at 1277 (bank robbery, shooting a guard); *Buck,* 609 F.Supp. at 714 (armed bank robbery, prison escape); *Askari,* 608 F.Supp. at 1046–47 (two prior convictions of violence, bank robbery, robbery); *United States v. Hazard,* 598 F.Supp. 1442, 1446 (N.D.Ill.1985) (abduction, kidnapping, rape, weapons offense).

**10.** *Coleman,* 777 F.2d at 893 (distribution of heroin along with 13 other arrests and 7 convictions); *Colombo,* 777 F.2d at 97 (narcotics violation, illegal gambling, bribery, interstate theft, transportation of stolen goods); *Daniels,* 772 F.2d at 383 (parole violations); *United States v. Hazime,* 762 F.2d 34, 36 (6th Cir.1985) (posses-

threats made by defendants [12] are the predominant reasons in those cases justifying pretrial detention. Particularly striking is that, in many of the cases a lengthy, impressive list containing several of the above factors was present. Certainly where such activity occurs detention is merited. Nor is it a coincidence that such activity frequently occurs in the presence of narcotics violations. As one court noted, "experience establishes that transactions involving controlled drug substances and guns go hand-in-hand in a very large number of ... cases." *Ridinger*, 623 F.Supp. at 1392. In part, this must have been what Congress had in mind.

But the fact that drug offenses are often accompanied by violence, and that the majority of pretrial detentions under the Bail Reform Act of 1984 have been in such instances, does not imply that pretrial detention should be limited to those drug offenses involving violence. As this opinion noted earlier, the very nature of drug offenses themselves constitutes a danger to the community and can in some instances warrant pretrial detention absent the elements of violence. Other courts have so found. *Fortna*, 769 F.2d at 247; *Williams*, 753 F.2d at 335; *United States v. Daniels*, 622 F.Supp. 178, 179 (N.D.Ill. 1985); and *Jones*, 614 F.Supp. at 97–98. In all of these cases detention was based on the substantial threat that the defendant, if released, would continue trafficking in drugs.

Within the statutory safety concept and its violence ambit may be included the probable exposure or identification of an undercover agent or informer for the government whose life, safety or nature of his continuing crime-discovery operation could occur.

The factor of recidivism should be the predominant consideration in determining detention. Merely looking for the union of drugs and violence is not the litmus test; indeed, some courts have declined to order detention despite the presence of these other factors. While detaining the defendant, the *Ridinger* court nevertheless said of the violence factor:

> [I]f the possession of guns, standing alone, could be said to constitute clear and convincing evidence to support the entry of a detention order on the grounds of dangerousness, a very large number of persons accused of violations ... would be subject to pretrial detention as a matter of course. Such a conclusion is contrary to the legislative history of the Bail Reform Act.

623 F.Supp. at 1392. *See also Chimurenga*, 760 F.2d at 402 (district court found that defendant did not pose a risk to the safety of the community; but had him detained on the risk of flight basis only); *Jessup*, 757 F.2d at 380 (same).

sion of stolen credit cards, resisting arrest); *Acevedo-Ramas,* 755 F.2d at 205 (juror bribery); *Williams,* 753 F.2d at 333 (4th Cir.1985) (conspiracy to distribute heroin, parole violations); *United States v. Lofranco,* 620 F.Supp. 1324, 1326 (N.D.N.Y.1985) (prior conviction of possession of drugs); *Buck,* 609 F.Supp. at 714 (racketeering); *Freitas,* 602 F.Supp. at 1294 (charged offense occurred while on pretrial release from rape charge); *United States v. Lepere,* 599 F.Supp. 1322, 1324 (D.Mass.1984) on rehearing, 603 F.Supp. 375 (D.Mass.1985) (fugitive status for 3 years).

12. *Colombo,* 777 F.2d at 97 (operated criminal enterprise involving extortion and threats); *Leon,* 766 F.2d at 78–79 (threatened undercover officer who arrested him and two potential witnesses); *Hazime,* 762 F.2d at 36 (stated, "if I find out who the people are who testified against me I will put my finger through their eyes"); *Delker,* 757 F.2d at 1400 (conspiracy to control union by violence, threats, and intimidation; tried to hamper government investigation by threatening and intimidating several alleged victims and witnesses); *Acevedo-Ramas,* 755 F.2d at 205 (attempted to buy police files to determine who witnesses were to kill them); *Ramey,* 602 F.Supp. at 824 (threatened a grand jury witness).

The Court therefore concludes that the Bail Reform Act's authorization of pretrial detention on the grounds of assuring the safety of the community is justified only when the evidence clearly establishes that the defendant's release would pose a serious physical danger to the community or a serious danger that the defendant would continue to distribute illegal substances. The latter factor is sufficient to warrant detention by itself, but it must be established by evidence other than the mere fact of indictment of the charged offense. The Court's research has uncovered only one case in which it appears that pretrial detention was justified largely on the basis of the indicted offense. *Strong*, 775 F.2d at 506. To the extent that that was the primary reason for detention in this isolated case, this Court would disagree with that holding.

▮ Applying these considerations to the defendant Norma Cox, the Court noted that there were no allegations of violence against her, either from present behavior or past conduct. The Court did find that there was probable cause to believe she had committed the narcotics offense with which she was charged (thus the presumption arose in this case), but also found that she had met her burden of production overcoming that presumption, and that the government thereafter had failed to establish by clear and convincing evidence that she posed a danger to the community. She has no past charges involving narcotic offenses, nor was evidence introduced of past charges of any serious nature. The Court heard no testimony demonstrating her intent to continue trafficking in drugs if released. In short, nothing was presented which would allow this Court to conclude that the defendant posed a serious threat to the community should she be released. She clearly did not fall within the "small but identifiable group of particularly dangerous defendants" that Congress intended be detained under the Bail Reform Act.

Upon the considerations above stated, IT IS ORDERED that defendant Cox not be detained and be released on the basis of conditions set out in a previous Order of the Court, this 20th day of March, 1985.