UNITED STATES OF AMERICA, Plaintiff

v.

CARL EVERTON SIMON, Defendant

Criminal No. 90-143

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 1, 1990

TERRY M. HALPERN, United States Attorney, By SUSAN R. VIA, Assistant United States Attorney, St. Thomas, V.I., *for plaintiff*

SUSAN BRUCH MOOREHEAD, ESQ. (GRUNERT, STOUT, MOORE & BRUCH), St. Thomas, V.I., *for defendant*

CARTER, *District Judge*

## OPINION

From October 2 to October 5, 1990, Irvin Brodie, half brother of the defendant Carl Everton Simon, was on trial before this Court for first-degree murder, use of an unlicensed handgun in a crime of violence, and flight to avoid prosecution. Government v. Brodie, Crim.

Nos. 90–59 & 90–87 (Carter, J.). While at her home on the evening of October 3, 1990, Angeli Turbe, a juror in the Brodie case, was called outside by her brother, Richard Gomez, who stated that a former classmate of hers wished to talk to her. She went outside, where she encountered Simon. After exchanging greetings with Turbe, Simon stated that he wished to speak to her about the Brodie case. Turbe, heeding the Court's instruction not to talk to anyone about the case, refused to continue the conversation. As she turned away, Simon said something to the effect that "You would do the same if it was your brother." According to the government's version, these words were shouted at Turbe. In reporting the incident to the Court, Turbe did not, as I recall, indicate that Simon shouted at her.[1]

Simon was arrested and then indicted[2] on a charge of jury tampering in violation of 18 U.S.C. § 1503. Gomez, arrested with Simon, was subsequently released without charges being filed.

The matter came before Magistrate Barnard of this Court on October 9, 1990, on the government's motion to detain Simon pursuant to 18 U.S.C. § 3142(e)–(f). The Magistrate found that "the Government ha[d] presented clear and convincing evidence that the Defendant poses a risk to [the] safety of the community or prospective witnesses." United States v. Simon, Mag. No. 90. Simon moved for reconsideration of the order; the Magistrate denied that motion in an order dated October 15, 1990.

■ On October 29, 1990, this case came before the Court on Simon's motion, pursuant to 18 U.S.C. § 3145(b), to revoke the orders entered by the Magistrate on October 10 and 15, 1990. By an oral order entered on the record, and confirmed by written order the following day, the Court revoked the Magistrate's orders and ordered Simon released forthwith on certain conditions. The Court stated on the record its reasons for overturning the Magistrate's determination and ordering Simon's release, but in light of the highest priority accorded in this society to freedom from government restraints prior

---

[1] Turbe reported the incident to the United States Marshal's office. When she came to court the next morning, she was kept apart from the other jurors. The Court questioned her and the other jurors to ascertain whether they too had been approached or had learned of the Simon-Turbe incident. No other juror had been approached, and none knew about the incident. Turbe was excused from the jury and the trial proceeded.

[2] Apparently, Simon was the first person to be indicted by the first grand jury ever impaneled in the United States Virgin Islands.

to trial and conviction of a crime, it is vital that the government's authority to place individuals in pretrial detention be strictly construed and meticulously applied. Accordingly, I am embellishing my oral disposition in this written opinion.

## DISCUSSION

■ Although the Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3150, may have expanded the circumstances in which pretrial detention is applicable, pretrial detention is still the exception and not the rule. Pretrial detention is appropriate "only for a 'limited group' of offenders . . . , i.e., the 'small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.'" United States v. Traitz, 807 F.2d 322, 325 (3d Cir. 1986) (quoting S. Rep. No. 98–225, 98th Cong., 2d Sess. 6–7, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3189).

■■ The Court's review of the Magistrate's orders is de novo. United States v. Delker, 757 F.2d 1390, 1394–95 (3d Cir. 1985). The government concedes that there is no substantial risk of flight in this case and that the presumptions in favor of detention provided in 18 U.S.C. § 3142(e) are not applicable. Accordingly, the government has the burden of proving by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f); see also Traitz, supra, 807 F.2d at 325. The statutory factors to be considered in determining whether the government has met its burden are:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending

410

trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

■ The present case is not the sort of case that Congress had in mind when it provided for pretrial detention. From the preconditions of a hearing provided in 18 U.S.C. § 3141(f)(1), and the presumptions set forth in 18 U.S.C. § 3141(e), it is clear that Congress was primarily concerned with crimes of violence and narcotics offenses.

■ The government asserts that jury tampering is inherently a crime of violence, and points to language in the 1984 Bail Reform Act that defines "crime of violence," in part, as "any . . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another *may* be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B) (emphasis added). The record shows, however, that Simon merely went to Turbe's home and asked to talk to her about his brother's case, whereupon Turbe turned and fled into her house. It is undisputed that Simon made no threats or threatening gestures to Turbe. The government has offered no evidence that he was attempting to intimidate her. Turbe was, however, frightened by Simon's mere presence and by his attempt to speak to her about the case. If Simon had threatened Turbe with bodily harm or property damage, hindered her movement, or otherwise attempted to intimidate her in any way, the offense might well have been a "crime of violence." Simon, however, did none of these things. Thus, on the facts of this case, there is absolutely no basis for saying that Simon's offense, by its nature, involved any substantial risk of the use of physical force.

■■ Since no crime of violence or other circumstance enumerated in 18 U.S.C. § 3142(f)(1) is involved in this case, and since there is no serious risk of flight, the Court may order detention only if there is "a serious risk that the [defendant] will . . . attempt to obstruct justice, or . . . to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B); see United States v. Himler, 797 F.2d 156, 160 (3d Cir. 1986). To be sure, the legislative history of the 1984 Bail Reform Act indicates that Congress intended to preserve the courts' then-existing power to confine defendants who had threatened jurors or witnesses in their own cases. See S.

Rep. No. 98-225, supra, at 7, 12, 15, 21; see also 18 U.S.C. 3142(f)(2)(B); United States v. Coleman, 777 F.2d 888, 894 (3d Cir. 1985); Delker, supra, 757 F.2d at 1400 (3d Cir. 1985). Those concerns are not applicable to this case, however, since Simon's offense involved no threats of any kind. Furthermore, the circumstances of the incident suggest that Simon will not repeat the offense by attempting to tamper with jurors or witnesses in his own case. Cf. Traitz, supra, 807 F.2d at 326.

The government contends that Simon was attempting to corrupt the jury process. Simon contends that he was only seeking to obtain information concerning Turbe's impartiality as a juror in his brother's case, which he had reason to doubt.

■ The Court accepts the government's contention that Simon's intent was to influence the juror corruptly. Indeed, accepting Simon's version does not remove his act from the reach of § 1503. On even the government's version of the facts, however, Simon was not acting out of venality, but rather was motivated by sibling affection, unwisely to be sure, for his brother. His brother was on trial for first-degree murder, which carries a mandatory sentence of life imprisonment without parole. 14 V.I.C. § 923(a). Although Simon's conduct is inexcusable, it is a far cry from the venality, corruption and violence of the sort common in organized-crime cases, designed to destroy the integrity of the criminal justice system.

Simon's own offense carries a maximum penalty of five years imprisonment, see 18 U.S.C. § 1503, and under the federal sentencing guidelines, it appears that he is likely to receive a sentence of no more than eighteen months if convicted. See U.S.S.G., §§ 2J1.2, 4A1.1, 5A. There is no evidence that Simon in any way attempted to influence any juror or witness in the case leading to his own 1982 conviction for grand larceny, which carried a maximum penalty of ten years imprisonment. See 14 V.I.C. § 1083. Moreover, Simon now understands the trouble that his conduct caused and shows no propensity to repeat the offense.

Simon is living in a stable family situation and appears to be an upright citizen of the community. He has resided for five years at his present address in Estate Frydenhoj, St. Thomas, which he now shares with his companion, Ramona Henriquez, and their two children. For two years, Simon has been a self-employed automobile mechanic and auto body repairman, working out of his own home and the homes of friends. From 1985 to 1988, he worked as a mechanic at

Creger Motors in St. Thomas, and prior to 1985, he worked as an auto body repairman and an arc welder for various employers. He reports no significant assets. Simon is a 1977 graduate of Charlotte Amalie High School and holds an honorable discharge from the United States Army.

Simon's only prior felony conviction involved a car theft when he was twenty or twenty-one years old. In connection with that incident, he was convicted of grand larceny on March 10, 1982, sentenced on June 16, 1982 to two-and-one-half years imprisonment, two years of which were suspended, and placed on two years probation. He served his sentence and has had no further convictions except for a minor traffic offense in 1987, for which he was fined twenty-five dollars. Simon reports that he is in good health. There is no evidence that he abuses alcohol or drugs.

On the basis of this record, the United States Office of Probation and Parole concluded as follows in its pretrial report: "The defendant does not appear to be a risk of flight. Further, since a verdict has been reached in the criminal case [in which] the defendant allegedly tampered with a juror, it is unlikely he will be a danger to the community or the victim." Pretrial Services Report, Oct. 9, 1990, at 2.[3] Accordingly, the office recommended that Simon be released on various conditions.

■ For the reasons stated above, the Court finds that the government has failed to meet its burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of any person and the community.

Moreover, the penalties allowed under criminal law are to be applied not in abstraction but to the specific facts and conditions involved. In the abstract, Simon's act could be viewed as a great danger to the criminal justice system and the integrity of the jury process. In reality, however, it involves only a misguided and stupid attempt by a sibling to come to the aid of his brother facing possible life imprisonment. It does not minimize the danger of Simon's act to the integrity of the criminal justice system to recognize that that danger is not remedied by needlessly imposing pretrial detention in an unwarranted situation.

---

[3] The jury acquitted Simon's brother of murder, but convicted him of the lesser included offense of voluntary manslaughter. The jury found him guilty as charged on the other two counts.

## CONCLUSION

The Magistrate's orders of detention were plain error. Accordingly, the Magistrate's orders are revoked, and Simon is ordered released from custody forthwith on his own recognizance subject to the following terms and conditions:

1. Defendant shall not commit a Federal, State, Territorial, or local crime during the period of release;

2. Defendant shall report to the United States Marshal's Office and to the United States Office of Probation and Parole in St. Thomas on every Tuesday at 8:30 A.M., or at such other time as is convenient and agreeable to the Marshal's Office, the Office of Probation and Parole and the defendant; and

3. Defendant shall avoid all contact with Angeli Turbe, any other prospective witness who may testify concerning the offense and any juror in his case.

I am retaining jurisdiction of this case for all purposes.